Audra SOMMERS, a/k/a Timothy Kevin Cornish, Appellant,

v.

BUDGET MARKETING, INC., Appellee.

No. 81–1754.

United States Court of Appeals, Eighth Circuit.

Jan. 8, 1982.

Linda S. Pettit, Anthony J. Touschner, Des Moines, Iowa, for appellant.

Richard L. Rick, P. C., A Law Corp., Des Moines, Iowa, for appellee.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and STEPHENSON, Circuit Judge.

PER CURIAM.

Appellant Audra Sommers, plaintiff below, also known as Timothy Cornish, appeals from an order of the district court[1] entering summary judgment in favor of the defendant below, Budget Marketing, Incorporated. We affirm.

Sommers claims to be a "female with the anatomical body of a male."[2] Inasmuch as Sommers refers to herself in the feminine gender, this court will likewise do so. As Audra Sommers, appellant was hired by Budget on April 22, 1980, to perform clerical duties. On April 24, 1980, Sommers's employment was terminated. Budget alleged Sommers was dismissed because she misrepresented herself as an anatomical female when she applied for the job. It further alleged that the misrepresentation led to a disruption of the company's work routine in that a number of female employees indicated they would quit if Sommers were

---

1. The Honorable William C. Stuart, Chief Judge, United States District Court, Southern District of Iowa.

2. A medical affidavit submitted by Sommers stated that a psychological female with anatomical features of a male is one type of a transsexual but that transsexualism is not voluntarily assumed and is not a matter of sexual preference. A transsexual has been described as an individual who is mentally of one sex but physically of the other. Annot., 63 A.L.R.3d 1199, n.1 (1975), or as one born with the anatomical genitalia of one sex but whose self-identity is of the other sex. Annot., 78 A.L. R.3d 19, 54 (1977).

permitted to use the restroom facilities assigned to female personnel. After exhausting administrative remedies, Sommers brought an action against Budget, alleging that she had been discharged on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[3]

Budget moved to dismiss the above action for failure to state a claim and lack of subject matter jurisdiction, but in the alternative requested a more definite statement as to the basis for the alleged discriminatory treatment. On January 20, 1981, the district court ordered Sommers to submit an amended complaint to indicate whether she had been discriminated against because she was male, female, or transsexual, and whether she had in fact successfully undergone sexual conversion surgery. Sommers's amended complaint claimed she had been discriminated against because of her status as a female, that is, a female with the anatomical body of a male, and further stated that sexual conversion surgery had not been performed. Sommers nonetheless argued that the court should not be bound by the plain meaning of the term "sex" under Title VII as connoting either male or female gender, but should instead expand the coverage of the Act to protect individuals such as herself who are psychologically female, albeit biologically male.[4] In response, Budget argued that Title VII provided no relief for persons like Sommers. Treating Budget's motion to dismiss as one for summary judgment, Judge Stuart held:

Courts have expressly refused to extend Title VII coverage to those discriminated against because of their transsexuality. See, e.g., Voyles v. Ralph K. Davies Medical Center, 403 F.Supp. 456 (D.C. Cal.), aff'd, 570 F.2d 354 (9th Cir. 1975). The plaintiff's own medical affidavit defines the condition of the plaintiff as one form of transsexualism. Irrespective of the plaintiff's manipulation of semantics, the Court finds no genuine issue of fact as to the plaintiff's sex at the time of discharge from employment. Although the Court is aware of plaintiff's personal dilemma, the Court does not believe that Congress intended by its laws prohibiting sex discrimination to require the courts to ignore anatomical classification and determine a person's sex according to the psychological makeup of that individual. The problems of such an approach are limitless. One example is the simple practical problem that arose here—which restroom should plaintiff use?

Plaintiff, for the purposes of Title VII, is male because she is an anatomical male. This fact is not disputed. As the Court accepts the biological fact as the basis for determining sex, the Court finds that entry of summary judgment is appropriate.

Accordingly, the court entered summary judgment in favor of Budget. Sommers contends on this appeal that the district court erred in concluding that Title VII coverage did not extend to those discriminated against because of their transsexuality and therefore erred in awarding summary judgment to Budget. We disagree.

■ Summary judgment is proper when the court finds that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Vette Co. v. Aetna Casualty & Surety Co., 612 F.2d 1076 (8th Cir. 1980). The facts must be assessed in the light most favorable to the nonmovant and the latter must be afforded the

3. 42 U.S.C. § 2000e–2(a)(1) provides in pertinent part:
(a) It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin or . . . .

4. Sommers produced affidavits of two physicians which stated that the medical profession currently regarded persons such as appellant as female. Budget submitted an affidavit of a physician which stated the medical profession regarded persons like appellant as male.

benefit of all favorable inferences which may be derived from the underlying facts as revealed in the pleadings, depositions, and affidavits filed therein. *McLain v. Meier*, 612 F.2d 349, 356 (8th Cir. 1979); *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 857 (8th Cir. 1978).

 With these standards in mind, we think the district court properly granted summary judgment to the employer here. Although this circuit has not previously considered the issue raised on this appeal, we are in agreement with the district court that for the purposes of Title VII the plain meaning must be ascribed to the term "sex" in absence of clear congressional intent to do otherwise. Furthermore, the legislative history does not show any intention to include transsexualism in Title VII. The amendment adding the word "sex" to the Civil Rights Act was adopted one day before the House passed the Act without prior legislative hearings and little debate. *Diaz v. Pan American World Airways*, 442 F.2d 385, 386 (5th Cir. 1971); *Wetzel v. Liberty Mutual Insurance Co.*, 511 F.2d 199, 204 (3d Cir. 1975); see Note, *Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964*, 84 Harv.L.Rev. 1109, 1167 (1971); Note, *Employer Dress and Appearance Codes and Title VII of the Civil Rights Act of 1964*, 46 S.Cal.L.Rev. 965, 968 (1973). It is, however, generally recognized that the major thrust of the "sex" amendment was towards providing equal opportunities for women. *Baker v. California Land Title Co.*, 507 F.2d 895, 896 (9th Cir. 1974), *cert. denied*, 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975); *Rosenfeld v. Southern Pacific Co.*, 444 F.2d 1219, 1225 (9th Cir. 1971); *Diaz v. Pan American*, 442 F.2d at 386.

Also, proposals to amend the Civil Rights Act to prohibit discrimination on the basis of "sexual preference" have been defeated. Three such bills were presented to the 94th Congress and seven were presented to the 95th Congress. *See Holloway v. Arthur Anderson Co.*, 566 F.2d 659, 662 n.6 (9th Cir. 1977). Sommers's claim is not one dealing with discrimination on the basis of sexual preference. Nevertheless, the fact that the proposals were defeated indicates that the word "sex" in Title VII is to be given its traditional definition, rather than an expansive interpretation. Because Congress has not shown an intention to protect transsexuals, we hold that discrimination based on one's transsexualism does not fall within the protective purview of the Act. *Accord, Holloway v. Arthur Anderson & Co.*, 566 F.2d at 662–63; *Powell v. Reads*, 436 F.Supp. 369, 371 (D.Md.1977); *Grossman v. Board of Education*, 11 FEP Cases 1196, 1199 (D.N.J.1975), *aff'd*, 538 F.2d 319 (3d Cir.), *cert. denied*, 429 U.S. 897, 97 S.Ct. 261, 50 L.Ed.2d 181 (1976); *Voyles v. Ralph K. Davis Medical Center*, 403 F.Supp. 456, 457 (N.D.Cal.1975), *aff'd* 570 F.2d 354 (9th Cir. 1978).

We are not unmindful of the problem Sommers faces. On the other hand, Budget faces a problem in protecting the privacy interests of its female employees. According to affidavits submitted to the district court, even medical experts disagree as to whether Sommers is properly classified as male or female. The appropriate remedy is not immediately apparent to this court. Should Budget allow Sommers to use the female restroom, the male restroom, or one for Sommers's own use?

Perhaps some reasonable accommodation could be worked out between the parties. The issue before this court is not whether such an accommodation can be reached. Rather, the issue is whether Congress intended Title VII of the Civil Rights Act to protect transsexuals from discrimination. As explained above, we hold that such discrimination is not within the ambit of the Act.

The decision of the district court granting summary judgment in favor of the employer is affirmed.