Brenda Faye **BENSON**, Appellant,

**Alberta Louise Hallman and Michael Johninson,**

v.

**LITTLE ROCK HILTON INN**, Appellee.

No. 83–1728.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1984.

Decided Aug. 27, 1984.

Rehearing and Rehearing En Banc Denied Oct. 4, 1984.

Kaplan, Hollingsworth & Brewer, P.A. by P.A. Hollingsworth, Little Rock, Ark., for appellants.

Gardere & Wynne by Ronald M. Gaswirth, Patrick J. Maher, Dallas, Tex., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

BRIGHT, Circuit Judge.

Brenda Faye Benson brought this action under 42 U.S.C. § 1981 and Title VII asserting that she had been discharged as a chambermaid at the Little Rock Hilton Inn (Inn) in retaliation for bringing a suit for individual and class action relief under section 1981. The district court[1] denied Benson's motion for class certification and dismissed the action on its merits. Benson appeals, asserting that the district court erred in concluding that she was not discharged in retaliation for having filed her section 1981 claim. We affirm.

## I. BACKGROUND.

Brenda Faye Benson is a black woman. At the time of her discharge, she had worked at the Inn as a chambermaid for about two months. Her regular job duties included cleaning the hotel's executive offices. On December 27, 1978 Benson was cleaning the office of William Malleson, the hotel's general manager. In picking up some papers from the floor to place upon his desk, she discovered a document entitled "Nigger Application for Employment." The racial slurs on this paper, which the district court rightly found to be "a sick and bigoted attempt at humor, that can only be viewed as utterly deplorable," greatly upset Benson. Malleson discussed the mock application with Benson later that day. He called in two dining room managers who were responsible for the document, and made them apologize to her. He did not otherwise discipline these employees.

On January 10, 1979, Benson filed a class action against the Inn under 42 U.S.C. §§ 1981, 1985, 1988 and the thirteenth amendment. In her complaint, Benson alleged that the defendant "maintain[ed] policies and practices which adversely affect black female employees because of their race by subjecting them to fill out applications that is [sic] attached to this complaint as Exhibit A," referring to the application mentioned above. On January 11, 1979 Malleson read in the Arkansas Gazette that Benson had filed this lawsuit. The article reported that Benson's attorney "said his client had been instructed to fill out the form after she came to work." Malleson approached Benson at the hotel and inquired about the article. After their conversation, he fired her.

The district court dismissed Benson's initial complaint for failure to state a claim. She filed an amended complaint on October 31, 1979, alleging that her discharge from the Inn was in retaliation for filing her section 1981 claim. The amended complaint invoked both sections 1981 and Title

---

1. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern Dis-

VII, 42 U.S.C. § 2000e.[2] The case went to trial without a jury in the district court on January 12, 1983. After hearing conflicting accounts from Malleson and Benson about their January 11, 1979 conversation, the district court found that Benson lied in telling her lawyer that she was instructed to fill out the mock application, that she admitted this lie to Malleson, and that she also lied in telling Malleson that she had lost her copy of the application. The court concluded that Malleson fired Benson "because he believed in good faith that she had falsely libeled the hotel, had lied to him, and had stolen the document. No racial considerations entered into that decision." The court thus denied her claim, and Benson now appeals.[3.]

## II. DISCUSSION.

■ Benson's retaliation claim properly arises only under 42 U.S.C. § 1981 because at the time of her dismissal, she had not filed suit under Title VII. Although section 1981, unlike Title VII,[4] does not expressly prohibit an employer from terminating an employee in retaliation for charging the employer with unlawful discrimination, this court has held that the principles underlying Title VII and section 1981 are the same, and has treated retaliation claims under section 1981 as though they were brought under Title VII. *See Sisco v. J.S. Alberici Construction Co.,* 655 F.2d 146, 150 (8th Cir.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *Setser v. Novack Investment Co.,* 638 F.2d

1137, 1146–47 (8th Cir.), *modified on other grounds,* 657 F.2d 962 (8th Cir. en banc), *cert. denied,* 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981); *Goff v. Continental Oil Co.,* 678 F.2d 593 (5th Cir.1982). As the Fifth Circuit has expressly held, "[section] 1981 does encompass claims of retaliation when an adverse action is taken in response to a person's filing of an EEOC charge or civil rights lawsuit in which discrimination is alleged." *Id.* at 598. Thus, Benson's claim of retaliation is cognizable under section 1981.

■ This court has given employees filing discrimination claims with the EEOC or the federal courts broad protection from retaliation. In *Womack v. Munson,* 619 F.2d 1292 (8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981), we said:

> The merits of a charge made against an employer is irrelevant to its protected status. *Abramson v. University of Hawaii,* 594 F.2d 202, 211 (9th Cir.1979); *Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1007 (5th Cir.1969). Access is protected; administrative and judicial mechanisms determine the truth, falsity, frivolousness or maliciousness of an EEOC charge or court complaint. Thus, employer retaliation even against those whose charges are unwarranted cannot be sanctioned.

*Id.* at 1298. *See Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1005 (5th Cir.1969) (employee filing EEOC charge

---

trict of Arkansas.

**2.** Subsequent to her discharge, Benson filed a Title VII charge with the EEOC and requested a right to sue letter.

**3.** Benson's brief raised three issues: (1) whether the district court erred in its finding concerning the extent the application had been circulated at the hotel; (2) whether the court erred in finding the discharge was not discriminatory; and (3) whether the district court erred in denying class certification. Benson informed this court by letter on January 10, 1984 that she would waive the class certification issue and thus the only issue for decision would be whether the discharge was discriminatory. We take this statement also to waive the first issue concerning the extent of circulation of the offensive applica-

tion. In any event, even assuming this was not appellant's intention, we have reviewed the briefs and record on this issue and affirm the district court's finding as not clearly erroneous.

**4.** Title VII provides in part:
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees * * * because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

protected from retaliation regardless of truth or falsity of claim). So long as the employee has a reasonable belief that he is opposing conduct that constitutes unlawful discrimination, he is protected from retaliation by his employer. *See Sisco v. J.S. Alberici Construction Co., supra*, 655 F.2d at 150.

In *Setser v. Novack Investment Co., supra*, we articulated the rationale for this rule, stating,

> While it is conceivable that an applicant could incorrectly believe that he or she was the victim of racial discrimination prompting the filing of a complaint, a retaliatory response by an employer against such an applicant who genuinely believed in the merits of his or her complaint would inherently be in the nature of a racial situation. *See Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266 (6th Cir.1977). Judicial recognition of appellees' distinction could lead courts into the factual mire of determining whether a retaliatory act was based purely on non-racial criteria.

638 F.2d at 1146. In other words, if employers could dismiss employees for filing charges that later turned out to be unwarranted, "it would be impossible completely to disassociate the retaliation claim from the underlying charge of discrimination." *Goff v. Continental Oil Co., supra*, 678 F.2d at 599. Thus, to establish a claim of retaliation, an employee must establish that the employer retaliated against him for opposing conduct which the employee reasonably believed constituted unlawful discrimination.[5]

■ Whether the Inn retaliated against Benson for filing a section 1981 action is a fact question which required the trial court to determine whether the Inn "was motivated by a desire to retaliate." *Sisco v. J.S. Alberici Construction Co., supra*, 655 F.2d at 150. After hearing the evidence, the trial judge made the following findings:

> With respect to the circumstances of the actual discharge on January 11, 1979, the Court again accepts the testimony of Mr. Malleson, which in many ways is not too different from that of Ms. Benson. However, the Court specifically finds that Mr. Malleson did not at any time refer to Ms. Benson in any racially, derogatory, or demeaning manner.
>
> The Court finds that upon reading the article in the Arkansas Gazette,[6] Mr. Malleson became very upset and called Ms. Benson in. He asked her if she had told her attorney that black employees at the Hilton were required to fill in the offensive application, and she acknowledged that she had. He also asked her if she had kept the document and had lied to him when she said that she had lost it, and she acknowledged that she had. He also accused her in effect of stealing the document which she had taken from his office.
>
> Whether rightly or wrongly, Mr. Malleson fired Ms. Benson because he believed in good faith that she had falsely libeled the hotel, had lied to him, and had stolen the document. No racial considerations entered into that decision.

■ Focusing on the Inn's motivation, and not on Benson's reasonable belief that the Inn's conduct amounted to racial discrimination, the district court concluded that Malleson fired Benson because he believed that she lied to him about losing the scurrilous employment application, that she

---

**5.** By this statement, however, we do not intend to place the court's imprimatur on the filing of false claims of discrimination or false factual allegations in support of such claims. Indeed, Rule 11 of the Federal Rules of Civil Procedure deters the filing of false claims by obligating the attorney or party signing the pleadings, motions, or other papers to certify that to the best of his or her knowledge, after reasonable inquiry, the pleadings, motions, or other papers are well grounded in fact.

**6.** This newspaper article contained the following paragraph:

> A piece of paper that was entitled "application form" and contained numerous racial slurs was attached to the documents filed in court. P.A. (Les) Hollingsworth, Mrs. Benson's attorney, said his client had been instructed to fill out the form after she came to work.

lied in telling her attorney that she had to fill out such an application, and that she had stolen the application. Although allegations of discrimination in a section 1981 complaint are protected, *see Goff v. Continental Oil Co., supra,* 678 F.2d at 598, the district court found that Benson was not fired in retaliation for any of the allegations contained in the complaint. Rather, the court found that she was fired solely because she had, without authorization, taken the application forms from her employer's place of business and that she made false statements to her employer and lawyer. These reasons are separate from and independent of her lawsuit. Thus, the district court's finding that Malleson possessed no improper motive in terminating Benson is supported by the evidence and is not clearly erroneous.

Our holding in this case is not inconsistent with this court's decision in *Womack v. Munson, supra.* There the employee, who had filed an EEOC complaint and Title VII action against his former employer, was discharged by his current employer for statements he made relating to that lawsuit. 619 F.2d at 1297. We determined that the employee's postcomplaint statements were similar to the allegations in the Title VII complaint, and that they were "so inextricably related to the allegation[s] in the complaint that they [could not] be considered independently of one another." *Id.* In Benson's case, however, the district court found that the employer discharged Benson for reasons independent of the allegations in her complaint, and that no racial considerations entered into the employer's decision. This determination is amply supported by the record which establishes beyond any doubt that the employer in fact had never utilized that form and Benson knew of that fact. Her statement that the employer used the form was a fabrication. Thus, the untruthful statement in the context of this case cannot be said to amount to conduct opposing racial discrimination. The employer's motivation focused on an event which the trial court found to be independent of her complaint in the circum-

stances of this case. We will not overturn that determination.

## III. CONCLUSION.

For the reasons set forth in this opinion, the decision of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The views of the majority are contrary to both the legislative intent of the Congress in enacting the civil rights laws, and the emphasis in our case law, giving employees strong protection from retaliation for filing discrimination complaints.

Benson seeks to recover under Title VII for the hotel's conduct in discharging her allegedly in retaliation for filing a section 1981 complaint. Title VII provides in part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees * * * because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

The purpose of this section is to protect an employee's right to raise issues of employment discrimination without retaliation from his or her employer. *See Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1005 (5th Cir.1969). As the *Pettway* court stated, the purpose of section 2000e–3(a) "is to protect the employee who utilizes the tools provided by Congress to protect his rights. The [Civil Rights Act of 1964] will be frustrated if the employer may unilaterally determine the truth or falsity of charges and take independent actions." *Id.* Thus, *Pettway* held that an employee filing an EEOC charge is protected from retaliation regardless of the truth or falsity of the claim. The court based its broad holding on Congress's apparent intention to protect employee access to EEOC machinery. *Id.* at 1005. Even with

false charges, the confidentiality of EEOC proceedings protects the employer's interest in avoiding employee libel. *Id.* at 1007. Our Court recognized this protection in *Womack v. Munson,* 619 F.2d 1292, 1297 (8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981), and held that an employee's access to either the EEOC or the federal courts by filing charges or a Title VII lawsuit is protected from employer retaliation. *Id.*

As the majority acknowledges, section 1981 does not contain a retaliation provision, but our Court has held that this statute also prohibits employers from retaliating against employees who file EEOC charges, believing that their employer had discriminated against them. *Setser v. Novack Investment Co.,* 638 F.2d 1137, 1146–1147 (8th Cir.), *modified on other grounds,* 657 F.2d 962 (8th Cir. en banc), *cert. denied,* 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981). The Fifth Circuit has endorsed our position in *Setser,* and taken it one step further to hold that section 1981 encompasses a cause of action for an employee who has been discharged in retaliation for filing either an EEOC charge or a lawsuit under section 1981. *Goff v. Continental Oil Co.,* 678 F.2d 593, 598–600 (5th Cir.1982).

Extending this protection against retaliation to the section 1981 context makes good sense, as both section 1981 and Title VII are aimed at the same evil: an employer's discriminatory treatment of an employee. As the Supreme Court observed in *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), Congress intended "that the remedies available to the individual under Title VII are co-extensive with the individual's right to sue under [section 1981], and that the two procedures augment each other and are not mutually exclusive." *Id.* at 459, 95 S.Ct. at 1719 (citing H.R.Rep. No. 92–415 at 19 (1971)). Indeed, our decision in *Setser* stands for the proposition that employer retaliation is but another form of discrimination prohibited by Title VII and section 1981 alike. *See also Sisco v. J.S. Alberici Construction Co.,* 655 F.2d 146, 150 (8th Cir.1981), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982). In *Goff,* the Fifth Circuit was clearly motivated by the concern that "[s]ection 1981 would become meaningless if an employer could fire an employee for attempting to enforce his rights under that statute." *Goff v. Continental Oil Co., supra,* 678 F.2d at 578.

Moreover, in practical terms, it is the lawyer who decides whether to file a complaint under section 1981 or Title VII. Drawing a distinction based on technical differences between the two statutes can only have a chilling effect on the employee's conception of whether a retaliatory discharge is unlawful—something Congress clearly wanted to avoid. Thus, the fundamental purpose of protecting an employee's right to pursue a discrimination claim in federal court applies with equal force whether that claim invokes Title VII or section 1981. Employers cannot discharge their employees in retaliation for their pursuit of a section 1981 action.

An employee seeking to prove a retaliatory discharge for pursuing a section 1981 lawsuit bears the same burden of proof as that for any discrimination claim under Title VII or section 1981. *Pinkard v. Pullman-Standard,* 678 F.2d 1211, 1224 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); *Goff v. Continental Oil Co., supra,* 678 F.2d at 599; *see generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668 (1973). The employee must establish a prima facie case of retaliation: (1) protected conduct; (2) adverse employment action; and (3) a causal connection between the two. *Womack v. Munson, supra,* 619 F.2d at 1296; Schlei & Grossman, Employment Discrimination Law 557–562 (1983). Once a plaintiff sets forth a prima facie case, the employer has the burden of showing a legitimate, nondiscriminatory reason for the discharge. The plaintiff may then nevertheless recover upon demonstrating that the employer's reason is a mere pretext for discrimination. *Id.*

As I view the record, Benson established a prima facie case of retaliation. She proved that she filed a section 1981 lawsuit, which we have held to be a protected activity; that Malleson learned of the lawsuit by reading the *Arkansas Gazette* article; and that Benson was then immediately discharged, justifying an inference of a retaliatory motive.

Despite this prima facie showing, however, the district court specifically found that Benson was discharged for lying about the hotel instructing blacks to fill out the mock application, for lying about having lost the document, and for "stealing" it. Although Benson's account of her conversation with Malleson differed with Malleson's at trial, the trial court resolved this conflict by crediting Malleson's version of the facts.

The appellant does not, as the majority appears to suggest, contend that these findings were clearly erroneous; she rather argues that her conduct is nevertheless protected under the rationale of our decision in *Womack*. As to the first reason advanced for her discharge, I agree. Womack, a black man, worked as a deputy sheriff and later as an investigator for a state prosecutor. He first filed a Title VII charge alleging that the sheriff required black deputies to physically abuse black suspects. Later Womack filed a class action lawsuit based on this charge. When his next employer, the state prosecutor, became aware of Womack's lawsuit, he discharged Womack. The prosecutor's proffered nondiscriminatory reason for the discharge, accepted by the district court, was that Womack had admitted physically abusing black suspects when he was a deputy sheriff, and subsequently denied both this admission and the abuse. In the prosecutor's view, Womack's admission and later denial indicated that either he had abused suspects or he had lied about it; in either case he had to be fired.

Our Court accepted the district court's factual finding, but reversed, holding as a matter of law that the admission of abuse and denial were too closely related to Womack's allegation in his Title VII lawsuit to constitute a legitimate nonretaliatory reason for the discharge. *Womack v. Munson, supra,* 619 F.2d at 1296–1297. We decided that Womack's discharge would not have occurred in absence of the lawsuit he filed against the sheriff.

In contrast to the majority, I do not read *Womack* to be based on a distinction between "pre-complaint" and "post-complaint" conduct. Rather, the factors which led us to conclude that the reason proffered for Womack's discharge was too closely connected with his filing of a Title VII lawsuit were: (1) he was initially questioned by his employer only because he filed the lawsuit; and (2) the reason—his admission and denial of suspect abuse—dealt directly with his personal knowledge of the substance of his allegation. *Id.* at 1297. These same considerations are present here. Malleson questioned and discharged Benson immediately after he learned she had filed her suit. His question to her about the sincerity of her allegation related directly to her personal knowledge of the substance of her complaint. There is simply no way to separate Benson's answer to this question from the allegation in her lawsuit.

The majority opinion concludes that the principles underlying Title VII and section 1981 are the same, and that retaliation claims brought under section 1981 should be treated as though they were brought under Title VII. Yet, the majority's holding does not give Benson the same protection she would have had she filed her first complaint under Title VII rather than under section 1981. To be sure, section 2000e–3(a) of Title VII distinguishes two types of employee conduct: opposition to an unlawful employment practice, and participation in Title VII proceedings. Schlei & Grossman, *supra*, at 533. While courts give basically absolute protection for "participation" conduct, *see, e.g., Pettway v. American Cast Iron Pipe Co., supra,* 411 F.2d at 1005–1007, the degree of protection for an employee's conduct "opposing an

unfair employment practice" is less clear, but certainly more narrow.

Most courts protect informal opposition conduct from retaliation so long as the employee has a reasonable and good faith belief that the opposed employer practice is unlawful. *Sisco v. J.S. Alberici Construction Co., supra,* 655 F.2d at 150; *Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir.1978); *Hearth v. Metropolitan Transit Commission,* 436 F.Supp. 685, 688–689 (D.Minn.1977). The objective "reasonable belief" standard is apparently an effort to distinguish legitimate informal opposition conduct from unreasonable, insubordinate, or disruptive conduct in the workplace, recognizing an employer's interest in selection and control of its personnel. *See Armstrong v. Index Journal Co.,* 647 F.2d 441, 448 (4th Cir.1981); *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 231 (1st Cir.1976). In sum, the end result of the distinction between "opposition" and "participation" conduct under Title VII is to give greater protection to the employee who files formal charges with the EEOC.

The majority has apparently decided that this case is governed by the "opposition" standard; it precludes relief for Benson because she made an unreasonable and bad faith statement to her lawyer. The opposition standard strikes me as inappropriate. The filing of a section 1981 lawsuit more closely resembles an employee's participation in EEOC proceedings than informal opposition conduct. Informal protest or opposition may take many forms that are potentially disruptive and not intended protection by Congress; filing a section 1981 action, like an EEOC charge or a Title VII lawsuit, is an employee's utilization of an enforcement process established by Congress. Thus the overall purpose of protecting employee assertion of discrimination claims from retaliation would be served by extending the same broad protection to filing a section 1981 suit which exists for filing an EEOC charge or a Title VII action.

It is true that the confidentiality of EEOC proceedings gives greater protection to an employer's interest in avoiding maliciously libelous allegations of discrimination. But, the language of section 2000e–3(a) clearly gives the same degree of protection to allegations in a Title VII complaint as for allegations in an EEOC charge,[1] even though the Title VII lawsuit is public information. This fact indicates that when forced to choose, Congress would prefer not to chill an employee's right to file a discrimination suit, even if this impinges upon the employer's interest in avoiding libelous complaints. In this case, the record reflects that the only person Benson told that the hotel instructed black employees to fill out the mock application was the lawyer who filed her complaint. To hold that this allegation is a legitimate reason for a discharge will certainly have a chilling effect upon a person's willingness to risk his or her employer's vengeance by consulting an attorney and filing suit. *See Goff v. Continental Oil Co., supra,* 678 F.2d at 598. Further, Benson is clearly penalized under the majority opinion for her lawyer's decision to file under section 1981 rather than Title VII.

Moreover, even if the opposition standard is applied, the requirement is that the plaintiff have a good faith belief that he or she had been discriminated against. *See, e.g., Goff v. Continental Oil Co., supra,* 678 F.2d at 598; *Setser v. Novack Investment Co., supra,* 638 F.2d at 1146. There are several affirmative indications in this record that Benson believed she had been discriminated against. Her initial complaint went beyond the specific bad faith allegation about the hotel's use of the application to allege that the hotel maintained sexually discriminatory job classifications, and other racially and sexually discriminatory policies and practices relating to wages, job assignments, and other terms and conditions of employment. These are

---

**1.** "[P]articipating in any manner in an investigation, proceeding, or hearing under this subchapter," clearly includes the filing of a Title VII suit, *see* 42 U.S.C. § 2000e–5.

certainly cognizable allegations under section 1981, and thus the nonmalicious parts of her complaint suggest Benson's general good faith.[2] Thus, she was exercising a protected right when she filed suit.

In addition, the facts developed at the trial on Benson's discharge claim indicate that she experienced distress over the application, believed it was racially discriminatory, and believed that it was indicative of other problems at the hotel. I note here that she could conceivably have recovered from the hotel based upon a truthful version of her experience surrounding the mock application and the comparatively light reprimand the supervisors responsible for its distribution received.[3]

Benson may well have been mistaken in her belief that the hotel's actions were discriminatory. Her complaint may have been deficient in certain respects, and she may well have lied to her lawyer about the hotel's use of the mock application. Nevertheless, the act of filing a civil rights lawsuit is protected from retaliation. Benson should not lose this protection by virtue of including a false allegation in her complaint.

This, however, does not end the inquiry. The district court found two other reasons for her discharge, that Benson lied about having lost the mock application, and took the document from the hotel contrary to the management's instructions to her. Either of these reasons may constitute a legitimate, nondiscriminatory justification for her discharge. On the other hand, they may be inseparable from the underlying incident which prompted Benson's lawsuit and therefore impermissible motives under *Womack*. Determining the causal relationship between these various reasons and Benson's discharge is a factual determination which is best made initially by the district court, and it has made no such determination. Thus, I would remand to the district court for the purpose of determining whether Benson would have been discharged in absence of her protected conduct—going to her lawyer and filing a complaint. *See Womack . v. Munson, supra,* 619 F.2d at 1297 & n. 7.

I conclude that Benson's bad faith allegation was inextricably intertwined with her consultation with an attorney and her pursuit of a discrimination claim. The allegation cannot therefore serve as an independent, nondiscriminatory reason for her discharge. I would thus reverse the judgment of the district court, and remand the case for a determination of whether Benson would have been discharged in absence of her protected conduct. If it were to find that she would otherwise have been discharged, her case is properly dismissed. If it were to find that the other reasons for her discharge were inseparable from the impermissible, retaliatory motive, then Benson would be entitled to judgment and appropriate relief.

For these reasons, I must dissent.

**2.** In *Pettway*, the Fifth Circuit approached this problem by analyzing whether the employee's letter to the EEOC stated an otherwise good charge when disregarding the malicious allegation in the letter. *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1007 (5th Cir.1969). Finding an otherwise good charge, the court concluded that the employee could not be discharged for the writing, and specifically reserved the question of whether one may be discharged for filing a totally malicious claim. *Id.*

**3.** We have held elsewhere that employer toleration of a racially discriminatory atmosphere is actionable, *see Taylor v. Jones,* 653 F.2d 1193, 1199 (8th Cir.1981). Compensation for the emotional distress Benson experienced from her initial discovery of the mock application could be recoverable as damages. *Block v. R.H. Macy &*

*Co.,* 712 F.2d 1241, 1245 (8th Cir.1983); *Williams v. Trans World Airlines,* 660 F.2d 1267, 1271–1273 (8th Cir.1981); *Smith v. Anchor Building Corp.*, 536 F.2d 231, 236 (8th Cir.1976).

The evidence clearly shows that two supervisory employees of the Little Rock Hilton Inn brought the scurrilous document into the hotel, and passed it around to a number of employees. Their only punishment for this racist conduct was a verbal reprimand. This factor should also be considered in determining whether Benson acted in good faith in bringing her lawsuit against the Hilton. She had every reason to feel that the hotel had failed to act vigorously in punishing those who were primarily responsible for the incident. One does not have to condone Benson's lying to her lawyer in order to affirm her right to protection from a retaliatory discharge.