607 F.Supp. 776 (1985)
Lawrence PERRY, Plaintiff,
v.
CITY OF COUNTRY CLUB HILLS, Defendant.
No. 82-0907C(2).
United States District Court, E.D. Missouri, E.D.
April 1, 1985.
*777 John Valentine, St. Louis, Mo., for plaintiff.
Carp & Morris, Ralph Levy, III, Clayton, Mo., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision after trial to the Court.
This is an action brought under 42 U.S.C. § 1981[1] and the Court has jurisdiction under 28 U.S.C. § 1331. Venue for this action is proper in the United States District Court for the Eastern District of Missouri. After consideration of the pleadings, the testimony and exhibits introduced at trial, the parties' briefs, and the applicable law, the Court enters the following memorandum which it adopts as its findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.
Plaintiff is a black, male citizen of the United States and a resident of Missouri. Defendant City of Country Club Hills (CCH) is a municipal corporation organized and existing under the laws of the State of Missouri. At all times relevant to this lawsuit CCH maintained, operated, and employed a police department.
From September of 1978 until February of 1980 plaintiff was employed as a police officer in the City of Bel-Ridge in the State of Missouri. Following his discharge from employment in Bel-Ridge, plaintiff, on March 6, 1980, filed with the EEOC a charge of discrimination against Bel-Ridge. Plaintiff claims that CCH refused to hire him as a police officer because of his claim against Bel-Ridge.
*778 To prove his retaliation claim plaintiff must show: "(1) that he engaged in activity protected by § 1981; (2) that an adverse employment action followed; and (3) that there was a causal connection between the two." Goff v. Continental Oil Co., 678 F.2d 593, 599 (5th Cir.1982). See Benson v. Little Rock Hilton Inn, 742 F.2d 414, 419 (8th Cir.1984) (Heaney, J., dissenting). With regard to the first requirement, the Eighth Circuit has recently stated in dicta[2] that to prove his claim of retaliation plaintiff must show that defendant "retaliated against him for opposing conduct which the [plaintiff] reasonably believed constituted unlawful discrimination." Benson, 742 F.2d at 417. [Emphasis added.] On the basis of this "reasonableness" standard, the Court would be forced to dismiss plaintiff's claim herein. The EEOC charge against Bel-Ridge eventually culminated in a trial before this Court. In its opinion in that case the Court concluded that "plaintiff's institution of this action was frivolous, unreasonable and without foundation" and proceeded to award defendant its reasonable attorney's fees. Perry v. Village of Bel-Ridge, No. 81-597C(3), slip op. at 9 (March 31, 1983). In light of its conclusion in the Bel-Ridge suit the Court would be collaterally estopped from now ruling that CCH retaliated against plaintiff for conduct which he "reasonably believed" to be unlawful discrimination. However, because the reasonableness standard is contained in dicta, because of the additional dicta to the effect that the courts must give "employees filing discrimination claims with the EEOC or the federal courts broad protection from retaliation," Benson, 742 F.2d at 416, and in light of Judge Heaney's strong dissent, the Court will not dismiss plaintiff's claim on this basis. Instead the Court will proceed with the analysis outlined above in Goff.
First, it is clear that plaintiff herein was participating in activity protected by § 1981 when he filed his claim against Bel-Ridge. Further, adverse employment action, i.e., a refusal to hire plaintiff, clearly followed. However, the third requirement, the causal connection, requires a more detailed analysis of the facts. Before analyzing the facts, the Court is reminded that the basic allocation of burdens and order of presentation of proof in a § 1981 case is the same as that set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for Title VII cases. Kenyatta v. Bookey Packing Co., 649 F.2d 552, 554 (8th Cir.1981). Plaintiff bears the initial burden of establishing a prima facie case of discrimination. Id. at 554 n. 5. If the plaintiff succeeds in proving the prima facie case by a preponderance of the evidence, the burden shifts to defendant to articulate some legitimate non-discriminatory reason for plaintiff's rejection. Id. Finally, if defendant meets his burden, the plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by defendant was a pretext for discrimination. Id. However, the ultimate burden of persuading the trier of fact, of course, remains at all times with the plaintiff. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).
Plaintiff claims that CCH retaliated against him for filing a claim against Bel-Ridge by refusing to hire him as a police officer. From September of 1978 until February of 1980 plaintiff worked as a police officer in Bel-Ridge. He was discharged from this position and as a result filed an EEOC charge against Bel-Ridge for alleged racial discrimination. Plaintiff testified that he first learned that CCH had an opening for a police officer in March of 1980. At that time he spoke on the telephone with David Westbrook, then Captain and Assistant Police Chief for CCH, who told him that there were two openings and that they were looking for officers with prior experience. Plaintiff then went down to the police department and spoke with *779 Westbrook. Plaintiff testified that he told Westbrook about the pending charge against Bel-Ridge and that Westbrook told him that he would nevertheless recommend him for the job and that his recommendation had never been turned down. Westbrook, however, testified that at this first meeting with plaintiff he informed plaintiff that CCH had a policy of hiring part-time employees and that if Robert Austin, a part-time police officer with the City, wanted the job, it was his. He testified, too, that he told plaintiff that if Austin did not want the job, he would choose a number of applications, do background checks, and send them to the Board of Police Commissioners for consideration. Plaintiff further testified that approximately one week after filing his application Westbrook invited him down to meet the Chief of Police, James T. McDermott. Plaintiff stated that either Westbrook or McDermott, he does not remember which, discussed the Bel-Ridge claim with him and left him with the impression that if he did not drop the charge he would not be hired by CCH. Sometime later plaintiff was told by an acquaintance, Perry Myers, that the position had been filled.
Further support for plaintiff's claim of retaliation comes from the actions and deposition testimony of Perry L. Myers. Myers knew plaintiff through his girl-friend, who worked the same shift at Bel-Ridge as did plaintiff. Myers testified that he spoke to both Westbrook and McDermott about plaintiff's employment application. McDermott, Myers says, informed him that the City simply could not afford to defend labor disputes or lawsuits and that, therefore, plaintiff was not hired. Depo. of Myers, 11/5/82, p. 37, lines 19-20. Westbrook, he says, told him that he did not recommend plaintiff because the City did not need a "nigger working here who goes running to the EEOC." Myers then wrote a letter, dated June 29, 1980, to the EEOC advising it of Westbrook's statement. See plaintiff's exhibit 1. Myers testified that he wrote the letter to the EEOC
because I thought that the Captain was wrong and I felt that the man should have been given an opportunity to at least compete or at least be, you know, go before the Board of Police Commissioners. All right if they didn't want to hire him for a reason, all right, but the Police Commissioners do it. I thought that the way he was doing things and running things was wrong....
Depo. of Myers at 26. There is some evidence, however, that Myers had reason to try to discredit Westbrook. Myers himself testified that in February of 1980 he started having problems with Westbrook. Myers testified that he believed the reason was that he had started an investigation of Norman Westbrook, David Westbrook's brother, and found out "things I probably shouldn't have found out," including that David Westbrook was trying to set up his brother. Depo. of Myers at 44. Westbrook testified at trial that he and Myers never got along and that Myers failed to follow rules and orders and always thought his way to do things was best. Evans also testified to the "bad feelings" between Westbrook and Myers. He stated that Myers had told him he should fire Westbrook who was running the department and was a poor supervisor.
Westbrook's testimony with regard to the part-time preference policy was corroborated by the testimony of James T. McDermott; the testimony of Robert E. Evans, the Mayor of CCH; the deposition of Joseph L. Kwiatowski, a member of the Board of Police Commissioners in CCH; and the testimony of Edward Havarten a member of the Board of Police Commissioners. The primary reason for the policy was that the officers who had worked part time for CCH were familiar with the CCH police department, and the CCH community and its streets. Further, when a part-time officer took a full-time job there was no need to go before the Board of Police Commissioners, as he or she was already hired, sworn in, and an officer.
Robert Austin, who was hired into the position for which plaintiff applied, had worked part time for CCH beginning in 1977. The testimony is unclear as to when *780 and why Austin was taken off the part-time schedule; but it is clear that he had not been scheduled some two to three months prior to March of 1980. Westbrook testified that this is not unusual for a part-time officer. When it became evident that CCH had an opening for a full-time police officer, Westbrook testified that he contacted Austin around the first of March and offered him the position. Westbrook accepted the job in mid-April and began working full time for CCH in May. Westbrook testified that because Austin was already a part-time officer for CCH he did not have to go through the normal procedures for one newly hired. The testimony that one going from part time to full time did not have to follow normal hiring procedures was corroborated by the testimony of both McDermott and Evans. The Court notes that a number of other police officers, including officers Crawford and McLaughlin, had become full-time officers after having worked part time first.
The Court also notes the testimony of Westbrook and McDermott that CCH has hired a number of police officers who had claims pending against former employers. Westbrook testified that six or seven such officers had been hired, while McDermott identified four.
After reviewing all of the evidence the Court concludes that plaintiff has failed to show the causal connection between his suit against Bel-Ridge and the decision of CCH not to hire him. Thus plaintiff has failed to meet his initial burden of establishing a prima facie case of discrimination. The credible evidence establishes that the reason plaintiff was not hired is clear: the part-time hiring preference of CCH brought Austin to the department's attention and once he accepted the position CCH had no reason to take further action on plaintiff's application.
Finally, defendant's claim for attorney's fees will be denied because the Court does not find that plaintiff's lawsuit was "frivolous, unreasonable, or without foundation." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

JUDGMENT
In accordance with the memorandum filed this day and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant shall have judgment against plaintiff on plaintiff's complaint.
IT IS FURTHER ORDERED that plaintiff's complaint be and is DISMISSED with prejudice.
IT IS FURTHER ORDERED that defendant's request for attorney's fees be and is DENIED.
IT IS FURTHER ORDERED that costs be taxed against plaintiff.
NOTES
[1] Plaintiff's second amended complaint consists of three counts. Count I, which alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., was dismissed by this Court on a summary judgment motion on September 30, 1983. Count II, which was voluntarily dismissed by plaintiff at trial, alleges a violation of 42 U.S.C. § 1981 by virtue of Country Club Hills' alleged discrimination on the basis of race. Count III, which still remains, alleges retaliatory discrimination in violation of 42 U.S.C. § 1981.
[2] The precise holding in Benson, 742 F.2d at 418, is that the district court's finding that defendant possessed no improper motive in terminating plaintiff was supported by the evidence and was not clearly erroneous.