Dewey THOMSON, Plaintiff,

v.

Mike OLSON, Mary Hawkins, Tom Duval, Dennis Davis, Bernard O'Kelly, Sally Page, Gene Kemper, Alice Clark, Tom Clifford, Kendall Baker, Douglas Treadway, North Dakota Labor Commissioner Craig Hagen, KFJM Radio, University of North Dakota, State of North Dakota, Defendants.

Civ. No. A2–94–23.

United States District Court,
D. North Dakota,
Northeastern Division.

Sept. 19, 1994.

Dewey Thomson, pro se.

Sara B. Gullickson, Fargo, ND, for defendants.

### *MEMORANDUM AND ORDER*

WEBB, Chief Judge.

This action was brought pursuant to Title VII of the Civil Rights Act of 1964 by pro se plaintiff Dewey Thomson. Before the court is defendants' motion to dismiss for failure to state a claim (docket # 6), pursuant to Fed. R.Civ.P. 12(b)(6). Plaintiff responded to that motion (docket # 12), and indicated it was a "partial" response only. The court denied a subsequent motion by the plaintiff for appointment of counsel (docket # 20) and ordered plaintiff to supplement his "partial" response to defendants' motion to dismiss within 10 days of service of the order. The order, dated July 12, 1994, indicated no further extensions would be granted to plaintiff. Plaintiff has failed to supplement his "partial" response. Also before the court is plaintiff's ex parte motion for service of process (docket # 21).

## FACTS ALLEGED BY PLAINTIFF

Plaintiff Thomson alleges he was discriminated against by his supervisor and that one of his female co-workers received preferential treatment in obtaining work hours at KFJM, a University of North Dakota radio station. According to Thomson, he witnessed his female co-worker kissing their supervisor, Mike Olson, on numerous occasions, both at work and elsewhere, and preference for work hours was given to this co-worker because of her relationship with Mr. Olson. Thomson alleges that he brought the complaint to Mr. Olson's attention in June of 1991, to no avail. A formal grievance was then submitted to the station manager by Thomson on August 24, 1991, alleging the discrimination. The station manager determined that no discrimination had occurred. Thomson alleges that the kissing continued with increasing frequency, and that this created a problem with other unnamed co-workers. He therefore filed a complaint with the Affirmative Action Officer at the University of North Dakota in May, 1992.

The Affirmative Action Officer similarly determined that no discrimination had occurred, and forwarded Thomson's complaint to the Vice–President of Academic Affairs' Office. Thomson then informed KFJM at a staff meeting in early June, 1992, that he had filed a complaint and was releasing various correspondences he had on the matter to the public. Plaintiff alleges he was then told to leave the staff meeting, and, upon his departure, a unanimous vote was taken suspending him from his duties as the 4 p.m. to 6 p.m. on-air news reader. Thomson began missing work. He was informed by the programming director, Mary Hawkins, in a letter dated June 10, 1992, a copy of which was attached to plaintiff's complaint, that because of her programming concerns, he would be temporarily removed from his on-air position. He was, however, expected to report for work as usual to be assigned other duties. Thomson failed to return to work. On June 16, Ms. Hawkins wrote a follow up letter to Thomson expressing concern over his failure to show up for work and general failure to comply with the KFJM employment policies.

She reiterated that he was to report to work as usual.

On June 22, 1992, Thomson was fired for "gross negligence." In the termination notice, Ms. Hawkins cited his failure to report to work since June 8th, failure to notify his supervisor of his absence from work from June 9th through June 17th, and failure to arrange for an acceptable substitute. A number of appeals followed.

Thomson filed an appeal pursuant to the Grievance Procedures of Student Life and his dismissal was upheld. He contends his due process rights were violated in this proceeding because an appeal board was not impaneled by the Affirmative Action Officer as provided for in the Grievance Procedures. Plaintiff next appealed unsuccessfully to the President of the University, which was followed by an appeal to the Equal Employment Opportunity Commission. Thomson, having determined that he had exhausted all administrative remedies, turns to this court seeking injunctive relief and damages in excess of $35,000,000.00.

## DEFENDANTS' MOTION TO DISMISS

Defendants argue that, because Thomson has not complied with Rule 8(a) of the Federal Rules of Civil Procedure, and because Thomson's 42 U.S.C. § 1983 claim is barred by the Eleventh Amendment, and because Thomson has no Title VII claim, plaintiff's claim should be dismissed.

Thomson opposes defendants' motion, arguing that, because his claim is based on 42 U.S.C. § 2000e–2 and 3, not 42 U.S.C. § 1983, dismissal would be improper.

## FAILURE TO FILE BRIEF

Rule 5(C) of the Local Rules provides that "[f]ailure to file briefs within the prescribed time shall subject such motions to summary ruling and the failure to file a brief by the ... adverse party shall be deemed an admission that, ... the motion is well taken." Plaintiff's failure to file a supplemental brief in response to defendants' motion to dismiss is, to the extent it fails to address issues in defendants' motion, "deemed an admission that, ... the motion is well taken." *Id.*

### MOTION TO DISMISS STANDARD

■ A motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). The court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Id.* "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Therefore, only when the complaint on its face "reveals some insuperable bar to relief" should a dismissal be ordered. *United States v. Aceto Agric. Chems. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989).

### DISCUSSION

■ Fed.R.Civ.P. 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The statement should be plain because under the Federal Rules the principal function of pleadings is to give the adverse party fair notice of the claim asserted so as to enable him/her to answer and prepare for trial. *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). The statement should also be short because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). A dismissal is appropriate where the complaint is "a labyrinthian prolixity of unrelated and vituperative charges that defie[s] comprehension" and the

amended complaint fails to cure prolixity and incomprehensibility. *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (per curiam), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973).

■ The court is mindful of the well established rule that the complaint of a *pro se* litigant be liberally construed in his favor. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam). However, the court is also mindful that this particular *pro se* litigant has completed at least two years of law school training and possesses the capacity to adequately set forth relevant facts and applicable law. This same litigant submitted a complaint which, including attachments, exceeds 150 pages and contains a surfeit of information. Indeed, the court has been forced to select the relevant material from a mass of verbiage, some of which is incomprehensible.[1]

Although in light of the foregoing the complaint is subject to dismissal for non-compliance with Rule 8, dismissal is also appropriate on substantive grounds as well.

### TITLE VII CLAIM

The relevant provision of Title VII states: It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .

42 U.S.C. § 2000e–2(a)(1).

■ As a preliminary matter, a Title VII claim may not be brought against a supervisory employee in his/her individual capacity. *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372

---

1. At one point, Thomson discusses an alleged rape by a French national that was not prosecuted by the Grand Forks County State Attorney's Office as supporting his claim of a R.I.C.O. violation. The court fails to see the connection between the alleged failure to prosecute a rape by the state attorney and the present discrimination action against a radio station owned by the University. Indeed, Thomson's Complaint and Partial Answer to Motion to Dismiss is "a labyrinthian prolixity of unrelated and vituperative charges that defie[s] comprehension[.]" *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (per curiam), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973).

(1994); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991); *Harvey v. Blake*, 913 F.2d 226, 227–28 (5th Cir.1990). The relief granted under Title VII is against the *employer*, not the individual employees whose actions would constitute a violation. *See Busby*, 931 F.2d at 772; *see also* 42 U.S.C. § 2000e(b) (definition of "employer"). Immediate supervisors are "employers" when delegated the employer's traditional rights, such as hiring and firing. *Harvey*, 913 F.2d at 227. Therefore, the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming those supervisory employees delegated employer's traditional rights or by naming the employer directly. In the present instance, Thomson may only bring a Title VII claim against Mary Hawkins, the Program Director at KFJM, and Kendall Baker, the President of the University, in their official capacities, and the State of North Dakota. He may not bring a claim against Mike Olson because, although Mr. Olson apparently oversaw employee scheduling, he did not have the authority to hire and fire Thomson. Therefore, neither he nor the other named individuals are "employers" within the purview of Title VII.

Plaintiff's discrimination claim against Hawkins, Baker and the State of North Dakota is necessarily predicated on a broad definition of the term "sex" in 42 U.S.C. § 2000e. He argues that the phrase "discrimination on the basis of sex" contained therein encompasses not only disparate treatment premised on one's gender, but also encompasses disparate treatment arising from a romantic relationship between a supervisory employee and another employee preferentially treated. Plaintiff argues that for Title VII purposes, the meaning of "sex" includes "sexual liaison" and "sexual attraction." This court does not agree.

The United States Supreme Court has recognized, because the word "sex" was added to Title VII shortly before passage, that "we are left with little legislative history to guide us in interpreting the Act's prohibition against discrimination based on 'sex.'" *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986).

The Eighth Circuit has not specifically addressed the issue of whether sex discrimination under Title VII encompasses disparate treatment premised on a romantic relationship between a supervisory employee and another employee preferentially treated. However, it has indicated that for "purposes of Title VII the plain meaning must be ascribed to the term 'sex' in absence of clear congressional intent to do otherwise." *Sommers v. Budget Marketing, Inc.*, 667 F.2d 748, 750 (8th Cir.1982). In *Sommers*, the court refused to afford a transexual whose employment was terminated protection under Title VII. *Id.* The court noted that "the word 'sex' in Title VII is to be given its traditional definition, rather than an expansive interpretation." *Id.* Although the court's discussion in *Sommers* focused on transexualism and discrimination on the basis of "sexual preference," the language is equally applicable in the present instance, particularly in light of the reasoning employed by other circuit courts.

The defendants' reliance on the Second Circuit's decision in *DeCintio v. Westchester County Medical Ctr.*, 807 F.2d 304 (2d Cir. 1986), *cert. denied*, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987), is persuasive. In *DeCintio*, the court reasoned:

the other categories afforded protection under Title VII refer to a person's status as a member of a particular race, color, religion, or nationality. "Sex" when read in this context, logically could only refer to membership in a class delineated by gender, rather than sexual activity regardless of gender. As the Supreme Court noted in *Trans World Airlines v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), "[t]he emphasis of both the language and the legislative history of [Title VII] is on eliminating discrimination in employment; similarly situated employees are not to be treated differently *solely because they differ* with respect to race, color, religion, sex, or national origin." *Id.* at 71, 97 S.Ct. at 2270 (emphasis added). The proscribed differentiation under Title VII, therefore, must be a distinction based on a person's sex, not on his or her sexual affiliations.

*Id.* at 306–07. This finding that preferential treatment on the basis of a consensual romantic relationship between a supervisor and an employee is not sex discrimination has been embraced by most of the other reviewing courts. *See, e.g., Miller v. Aluminum Co.,* 679 F.Supp. 495, 501 (W.D.Pa.), *aff'd,* 856 F.2d 184 (3d Cir.1988); *Candelore v. Clark County Sanitation Dist.,* 752 F.Supp. 956, 960–61 (D.Nev.1990), *aff'd,* 975 F.2d 588 (9th Cir.1992); *Autry v. North Carolina Dep't of Human Resources,* 820 F.2d 1384, 1386–87 (4th Cir.1987) (following *DeCintio* ). *See also Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982) (bisexual supervisor's sexual harassment of male and female alike would not violate Title VII; dicta).

The District of Columbia Court of Appeals appears to be the only circuit court that has adopted a broader definition of the term "sex." In *King v. Palmer,* 778 F.2d 878, 880 (D.C.Cir.1985), the court recognized that a Title VII claim existed for a female employee who was rejected in favor of another woman for a promotion because the other was having a sexual relationship with an individual responsible for the selection. It suggested that "unlawful sex discrimination occurs whenever sex is 'for no legitimate reason a substantial factor in the discrimination.' " *Id.* (quoting *Bundy v. Jackson,* 641 F.2d 934, 942–43 (D.C.Cir.1981)). Such an expansive definition of the term "sex" is not warranted by either congressional directive or sound reasoning. The language of the provision is clear: "It shall be an unlawful employment practice for an employer ... to discriminate against any individual ... because of such individual's ... sex...." The plain meaning must be ascribed to the term "sex" read in this context. The proscribed differentiation under this provision must be a distinction based on a person's sex, not on his or her sexual affiliations. Therefore, this court

joins in the chorus of reviewing courts in finding that preferential treatment on the basis of a consensual relationship between a supervisor and an employee is not a cognizable sex discrimination claim under Title VII.

### RETALIATION CLAIM

Thomson alleges that defendants also violated 42 U.S.C. § 2000e–3 in terminating his employment in response to his filing the discrimination claim with the Affirmative Action Office. The relevant provision states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). The Eighth Circuit Court has given employees filing discrimination claims broad protection from retaliation. *See Benson v. Little Rock Hilton Inn,* 742 F.2d 414 (8th Cir.1984); *Womack v. Munson,* 619 F.2d 1292 (8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). In *Benson,* the court stated

> The merits of a charge made against an employer is irrelevant to its protected status. Access is protected; administrative and judicial mechanisms determine the truth, falsity, frivolousness or maliciousness of an EEOC charge or court complaint. Thus, employer retaliation even against those whose charges are unwarranted cannot be sanctioned.

*Benson,* 742 F.2d at 416. Therefore, the merits of the underlying charge is irrelevant in assessing a retaliation claim.[2] In order to

2. The court in *Benson* noted

  [W]e do not intend to place the court's imprimatur on the filing of false claims of discrimination or false factual allegations in support of such claims. Indeed, Rule 11 of the Federal Rules of Civil Procedure deters the filing of false claims by obligating the attorney or party signing the pleadings, motions, or other papers to certify that to the best of his or her knowledge, after reasonable inquiry, the pleadings,

motions, or other papers are well grounded in fact.

*Benson v. Little Rock Hilton Inn,* 742 F.2d 414, 417 n. 5 (8th Cir.1984). This court is pleased that Mr. Thomson is pursuing a legal education. The judicial system does not exist, however, to provide an additional learning experience for law students, at least insofar as spending its time and resources reviewing claims such as the one here presented, so that students may better learn the

show retaliation for filing a Title VII claim, a plaintiff must show: "(1) statutorily protected participation; (2) adverse employment action; (3) a causal connection between the two." *Womack,* 619 F.2d at 1296.

■ In the present instance, Thomson alleges he notified KFJM at a staff meeting in early June, 1992, that he had filed a complaint. Thomson then began missing work. He failed to show up for work on June 9th and he failed to attend a scheduled meeting with his supervisor, Mary Hawkins, on June 10th. It is clear from the attachments provided to the court by Thomson that he continued to be absent from work without explanation for the next several days. Thomson was notified in writing by his supervisor, Mary Hawkins, on June 10th, and again on June 16th, that he was expected to arrive at work and perform his assigned duties. His absence continued. Finally, on June 22, 1992, Thomson's employment at KFJM was terminated for "gross negligence" in failing to report to work, and failing to notify his supervisor of his absence.

Thomson has the right to file a Title VII claim against the defendants, and to be afforded protection against retaliation for doing the same. He must, however, continue to work. It is clear from the record that Thomson's employment was terminated because he failed to show up for work. Thomson lost the protection against retaliation under Title VII when he stopped going to work.

### CONCLUSION

The court has carefully considered all other claims presented by plaintiff, including the alleged R.I.C.O. violations, and finds the same to be wholly without merit.

**THEREFORE,** defendants' motion to dismiss (docket # 6) is hereby **GRANTED.** Plaintiff's ex parte motion for service of process (docket # 21) is **DENIED.**

**IT IS SO ORDERED.**

process. Rule 11 of the Federal Rules of Civil Procedure specifies other inappropriate uses of

the system. This court will not tolerate abuse of the judicial process.