**Dee Deidre FARMER, Plaintiff,**

v.

**Kathleen M. HAWK, et al., Defendants.**

**Civil Action No. 92–1690(GK).**

United States District Court,
District of Columbia.

Jan. 22, 1998.

James J. Sandman, Laura K. McNally, pro hac vice, Arnold & Porter, Washington, DC, for Plaintiff.

Stacy M. Ludgwig, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff Dee Deidre Farmer is an inmate at the federal correctional institute in Butner, North Carolina ("FCI–Butner"). Farmer is a pre-operative male-to-female transsexual suffering from gender dysphoria, a medically recognized psychological disorder.[1] She brings this action to challenge the constitutionality of a Bureau of Prisons ("BOP") policy regarding the medical treatment of transsexuals, claiming that it violates the Equal Protection Clause of the Fifth Amendment. She further argues that the BOP's failure to promulgate a new policy, as well as its failure to enforce its existing policy, demonstrate a deliberate indifference to her serious medical needs and violate the Eighth Amendment. Farmer seeks injunctive and declaratory relief, and attorneys' fees and costs.

Farmer also brings a *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) claim against the BOP Medical Director, Dr. Kenneth Moritsugu, in his individual capacity. She argues that, by failing to provide treatment appropriate for her transsexualism and by failing to promulgate a new policy for the treatment of transsexuals, Dr. Moritsugu violated her Eighth Amendment rights. She seeks both compensatory and punitive damages from Dr. Moritsugu.

This matter is now before the Court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [# 78]. Having considered Defendants' Motion, Plaintiff's Opposition, Defendants' Reply and the entire record herein, for the reasons set out below, Defendants' Motion is hereby **granted** with respect to Plaintiff's claim that the BOP and Dr. Moritsugu, by failing to promulgate a new policy for the treatment of transsexuals, violated the Eighth Amendment (Count I ¶ 54; Count II ¶ 56, implementation clause). Defendants' Motion is hereby **denied** with respect to all other claims.

## I. Background[2]

Plaintiff Dee Deidre Farmer is a transsexual infected with AIDS who has been incarcerated in the federal prison system since 1986. (Decl. of Dee Farmer at 3.)

---

1. *See, e.g.,* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* § 302.50 (3d ed.1987). Transsexualism is a condition that exists when a physiologically normal person is extremely uncomfortable and discontent with his or her particular sex and prefers to be the other sex. Usually, transsexuals wish to utilize hormononal, surgical, and civil procedures to allow them to live in their preferred sex role. *Id.* at § 302.5x. They are distinguishable from homosexuals (who are sexually attracted to persons of the same sex) and transvestites (who are generally male heterosexuals who cross-dress for sexual arousal rather than sexual comfort). *Id.* at 302.30; Wise & Meyer, *Transvestism: Previous Findings and New Areas for Inquiry,* 6 J. Sex & Marital Therapy 116, 116–20 (1980). Farmer is a biological male but considers and conducts herself as a female. All parties to this action refer to Farmer using the female pronoun and the Court will do the same.

2. Pursuant to Local Rule 108(h), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." For reasons discussed below, the Court will consider Defendants' Motion, not as a Motion to Dismiss, but as a Motion for Summary Judgment. Accordingly, unless otherwise noted, the Court takes its facts from Defendants' Statement of Material Facts As to Which There Is No Genuine Issue.

Farmer claims that the BOP has failed to treat her transsexualism. She has challenged her alleged lack of treatment in previous actions. *See, e.g., Farmer v. Haas,* 990 F.2d 319 (7th Cir.1993) (following jury verdict for Defendants, Court of Appeals affirmed trial judge's decision not to request lawyer for Plaintiff Farmer, as there is no constitutional or statutory right to counsel in federal civil cases); *Farmer v. Carlson,* 685 F.Supp. 1335 (M.D.Pa.1988) (rejecting Farmer's claim that denial of hormone therapy and delay in provision of psychiatric treatment violated the Eighth Amendment and granting Defendants' Motion for Summary Judgment). Farmer also has cases pending in various courts, including *Farmer v. Mothersead, et al.,* (D.Mo., filed March 6, 1992), and *Farmer v. Beeler, et al.,* (D.Colo., filed June 11, 1993).

The actions previously filed by Farmer challenge the adequacy of the medical treatment provided her by individual facilities in which she has been housed. The instant action challenges the constitutionality of the BOP's system-wide policy on the treatment of transsexuals.

The BOP's *Program Statement* provides in general that inmates will be given care that is either "medically mandatory" or "presently medically necessary." (Defs.' Ex. 2, Bureau of Prisons *Program Statement* 6000.4, Ch. 1, Sec. 1, Mission Statement.) The *Program Statement* also articulates a policy dealing specifically with the medical treatment of transsexuals with hormone therapy, which provides that:

> It is the policy of the Bureau to maintain a transsexual inmate at the level of change existing upon admission. Should the Clinical Director determine that either progressive or regressive treatment changes are indicated, the Medical Director must approve these prior to implementation. The use of hormones to maintain secondary sexual characteristics may be continued at approximately the same levels as prior to incarceration (with appropriate documentation from community physicians/hospitals) and with the Medical Director's approval.

(*Id.* Ch. 5, Section 14, Transsexuals.) ("transsexual policy").

The BOP has not provided Farmer with hormone therapy for her transsexualism, despite her assertion that she was prescribed and had been taking female hormones as treatment for her transsexualism for several years prior to incarceration. (Compl.¶ 12.) Neither party provides, nor do they make reference to, any documentation of her pre-incarceration treatment.

The extent to which Farmer has received psychotherapy to treat her transsexualism is very much in dispute. Farmer claims that she was denied treatment for the first six years of her incarceration. She states that she was provided with psychotherapy in 1992 at the United States Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP–Springfield"), but only after she attempted to sever her scrotum with a razor. After Farmer was transferred from MCFP–Springfield, she claims the BOP again denied her treatment until she was transferred to FCI–Butner in February 1994. At FCI–Butner, Farmer underwent psychotherapy with Dr. Jim Hilkey until his retirement in May 1996. She claims that no treatment has been offered or provided since that date. (Farmer Decl. at 4.)

Defendants counter that Farmer has continuously received treatment at FCI–Butner since 1994. They submit the Declaration of Dr. Mike Schaefer, who states that he is Farmer's primary psychologist and has been so since the retirement of Dr. Hilkey. (Schaefer Decl. ¶ 3.) Schaefer states that he meets with Farmer on a bi-weekly basis and that other medical staff also monitor her condition on a regular basis. (*Id.* ¶¶ 5–6.)

Farmer alleges that she wrote several letters to Defendant Dr. Kenneth Moritsugu, Medical Director of the BOP, requesting treatment. Moritsugu responds that he recalls receiving only one letter dated July 30, 1992, in which Farmer apparently requested specific treatments for her transsexualism, namely estrogen, anti-androgen, castration, and psychotherapy. Dr. Moritsugu responded to Farmer's request by letter dated August 11, 1992.

In his August 11, 1992 letter to Farmer, Moritsugu explained to her the BOP's general policy for providing medical treatment and

its specific policy regarding the treatment of transsexuals. (Defs.' Ex. 1, Letter from Moritsugu to Farmer of 8/11/92, at 1.) He stated that the use of hormones for transsexualism may be continued at the same level of use existing prior to incarceration with his approval, but that Farmer was "not on hormone therapy upon arrival in the Federal Bureau of Prisons." (*Id.* at 1.) Dr. Moritsugu noted that he had not received a request for hormone therapy or castration from the medical personnel at MCFP–Springfield, the facility in which Farmer was incarcerated at that time, and stated that Farmer had indeed received counseling regarding her gender dysphoria. (*Id.* at 1–2.) He explained that because Farmer did "not present a specific mental health problem that medical health personnel can isolate for treatment", she would not receive any more treatment unless she has a specific need. (*Id.*)

## II. Analysis

### A. Standard of Review

Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. They argue that the Court has no subject matter jurisdiction over this action, and that Farmer has failed to state a claim upon which relief can be granted, relying upon several affidavits, court records, and other documents, attached to their Motion. The Federal Rules of Civil Procedure require that if, on a motion to dismiss for failure to state a claim, the movants submit matters outside the pleadings which are not excluded by the court, the motion must be treated as one for summary judgment and disposed of in accordance with Rule 56. Fed.R.Civ.P. 12(b). Defendants' Motion requires consideration of matters outside the pleadings and therefore will be treated as a Motion for Summary Judgment.

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is "material" if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the movant has met this burden, a court must consider all factual inferences in the light most favorable to the non-moving party. *McKinney v. Dole,* 765 F.2d 1129, 1135 (D.C.Cir.1985). Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *McKinney,* 765 F.2d at 1135. Moreover, "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Local Rule 108(h).

### B. Jurisdiction/Judicial Economy

Defendants argue that the Court should not entertain Farmer's claim. First, they argue that the Court has no subject matter jurisdiction over Farmer's claim for damages against Defendants in their official capacity. Second, Defendants note that Farmer has a similar action pending in the U.S. District Court for the Western District of Missouri and argue that the instant action is duplicative of the Missouri action. They argue that this Court should thus, in the interest of judicial economy, decline jurisdiction over the instant action. Finally, Defendants contend that, since Farmer requests an injunction against facilities at which she is no longer incarcerated and which threaten no harm to her, her complaint is moot. The Court will address Defendants' arguments *seriatim.*

First, Defendants are correct that this Court has no subject matter jurisdiction in this case over a claim for damages against them in their official capacities. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). However, that

conclusion is of little consequence, since Farmer does not seek monetary damages from Defendants in their official capacities. Instead, she seeks damages only from Dr. Moritsugu in his individual capacity pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which permits plaintiffs to obtain monetary damages from federal officials for injuries that result from their violations of constitutional rights. The Court will discuss the merits of Farmer's *Bivens* claim below.

■ Second, Defendants argue that this action duplicates *Farmer v. Mothersead, et al.,* (W.D.Mo., filed March 6, 1992) ("Missouri Lawsuit"), currently pending in the U.S. District Court for the Western District of Missouri. The two lawsuits, however, are very different. The Missouri Lawsuit names as defendants a psychology intern and the warden at MCFP–Springfield, as well as the Deputy Regional Director of the BOP's North Central Region. Those defendants are sued in their individual and official capacities. The Missouri Lawsuit seeks a declaratory judgment that the defendants' conduct violated Farmer's constitutional rights, injunctive relief requiring defendants to retain an expert in transsexualism to evaluate and prescribe treatment for her, and damages and costs. The instant action differs from the Missouri Lawsuit in that it challenges, not only the conduct of officials at several facilities (including MCFP–Springfield), but the BOP's system-wide policy regarding the medical treatment of transsexuals.

Defendants argue that a suit against government officials in their official capacities is equivalent to a suit against the government itself, citing *Atchinson v. District of Columbia,* 73 F.3d 418, 424 (D.C.Cir.1996). Thus, they argue, resolution of the Missouri Lawsuit (which names government officials as defendants) should grant Farmer any relief to which she may be due in this case (because it also names government officials as defendants).

The government is incorrect. A judgment in favor of Farmer in the Missouri Lawsuit will only resolve her *Bivens* claims against those three particular defendants (the psy-chology intern, the warden at MCFP–Springfield, and the Deputy Regional Director of BOP's North Central Region) and her challenge to the treatment that she received at MCFP–Springfield. The Missouri Lawsuit does not seek to change BOP system-wide policy, the relief that Farmer seeks in the present lawsuit. Thus, the Missouri Lawsuit is not duplicative of this case, and therefore provides no justification for this Court refusing to proceed with this action.

The parties fail to discuss still another suit which Farmer has filed challenging BOP's failure to treat her transsexualism, *Farmer v. Perkill, et al.,* (D.Colo., filed June 11, 1993) ("Colorado Lawsuit") In that case, Farmer has again sued Dr. Moritsugu, in both his individual and official capacities. Farmer's claims against Moritsugu in the Colorado Lawsuit do in fact mirror her claims against him in the instant action. However, "[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Washington Metropolitan Area Transit Authority v. Ragonese, et al.,* 617 F.2d 828, 830 (D.C.Cir.1980) (quoting *Speed Prods. Co. v. Tinnerman,* 171 F.2d 727, 729 (D.C.Cir.1948)). The instant case was filed in July 1992, while the Colorado Lawsuit was filed in June 1993. Consequently, the instant case will proceed to its conclusion.

■ Finally, Defendants argue that the instant action is moot because Farmer is no longer housed at the institutions that are the subject of her suit. Defendants claim that "[p]risoners transferred from a prison no longer have a pending case or controversy regarding injunctive relief as they no longer have a continued present injury or real and immediate threat of repeated injury." (Defs.' Mem.Summ.J. at 16, citing *Young v. Lane,* 922 F.2d 370, 373 (7th Cir.1991))

The government misreads Farmer's Complaint, for she does not seek an injunction against any specific federal facility. Instead, she seeks an injunction against the BOP itself. Farmer is subject to the BOP's general policy regardless of the facility in which

she is housed, so long as she remains in BOP's custody. Defendants are in a position to ensure that transsexuals are provided appropriate treatment anywhere within the BOP system. The particular facility in which Farmer is housed within the BOP is irrelevant, and the fact that she has been transferred from the FCI in Florence, Colorado, to FCI–Butner does not moot her challenge to the BOP's system-wide medical policies. The Court thus finds that Farmer has satisfied the existing case or controversy requirement imposed by the Constitution. *See O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Young v. Lane*, 922 F.2d 370, 373 (7th Cir.1991).

### C. *Bivens* Claims

Farmer brings two claims against Dr. Moritsugu in his individual capacity. First, she claims that he failed to promulgate a policy which would require the medical staff to provide her with treatment for her gender dysphoria. Second, Farmer claims that Dr. Moritsugu failed to direct the medical staff to provide her with treatment, which constituted deliberate indifference to her serious medical needs in violation of the Eighth Amendment. Defendants contend that Dr. Moritsugu, as a federal official, is entitled to qualified immunity, and thus Farmer's claims against him must be dismissed.

In *Bivens v. Six Unknown Officers*, 403 U.S. at 388, the Supreme Court held that an individual whose constitutional rights have been violated can bring a claim for damages against the official, in their individual capacity, who allegedly violated her rights. Farmer brings her claim against Dr. Moritsugu pursuant to *Bivens*. The defense of qualified or "good faith" immunity applies, however, to such suits against government officials. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Defendants argue that Dr. Moritsugu is shielded from liability by that doctrine.

■ When an official raises a qualified immunity defense, the "plaintiff can prevail only by showing not just that there was a violation, but that defendant's acts violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Crawford–El v. Britton*, 93 F.3d 813, 816 (D.C.Cir.1996) (citing *Harlow v. Fitzgerald*, 457 U.S. at 818). Thus, the Court must first examine whether Farmer's "allegations could possibly constitute a violation of a clearly established constitutional right." *Id.* at 825. If there is a clearly established right to treatment, then the Court's inquiry turns to whether Moritsugu's alleged acts (or failures to act) could possibly violate that right.

### 1. Whether transsexual prisoners have a clearly established constitutional right to treatment

■ *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), established that deliberate indifference to a serious medical condition constitutes cruel and unusual punishment which violates the Eighth Amendment. The existing BOP policy is to provide inmates with care that is either "medically mandatory" or "presently medically necessary." (Defs.' Ex. 2, BOP *Program Statement* 6000.4, Ch. 1, Sec. 1, Mission Statement.)

If transsexualism can be considered a "serious medical condition," then the BOP, under requirements imposed by *Estelle* and its own *Program Statement*, must provide transsexual inmates with treatment.

Although our Court of Appeals has not yet directly addressed the issue, other federal Circuit Courts have determined that transsexualism is a serious medical condition. *See, e.g., Brown v. Zavaras*, 63 F.3d 967 (10th Cir.1995); *Phillips v. Michigan Dept. of Corrections*, 731 F.Supp. 792 (W.D.Mich. 1990), *aff'd*, 932 F.2d 969 (6th Cir.1991); *White v. Farrier*, 849 F.2d 322 (8th Cir.1988); *Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir.1987), *cert denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *Supre v. Ricketts*, 792 F.2d 958 (10th Cir.1986). No Circuit Court has reached a contrary conclusion.

Many courts have reviewed the available medical literature and have concluded that transsexualism is not voluntarily assumed and is not a matter of sexual preference, but

is a 'very complex medical and psychological problem.' *See Meriwether*, 821 F.2d at 411–13, citing *Sommers v. Budget Marketing, Inc.*, 667 F.2d 748, 748 n. 2 (8th Cir.1982); *Pinneke v. Preisser*, 623 F.2d 546, 549 (8th Cir.1980). *See also American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders*, § 302.5x (3d ed.1980); Edgerton, *et al.*, *Psychological Considerations of Gender Reassignment Surgery*, 9 *Clinics in Plastic Surgery*, 355, 357 (1982); Comment, *The Law and Transsexualism: A Faltering Response to a Conceptual Dilemma*, 7 Conn.L.Rev. 288, 288 n. 1 (1975); Comment, *Transexualism, Sex Reassignment Surgery, and the Law*, 56 Cornell L.Rev. 963, 963 n. 1 (1971). The *Merck Manual of Diagnosis and Therapy* 1434 (14th ed.1982), states that:

> A transsexual believes that he is the victim of a biologic accident, cruelly imprisoned within a body incompatible with his real sexual identity ... The diagnosis is made only if the disturbance has been continuous (not limited to periods of stress) for at least 2 yr, is not symptomatic of another mental disorder such as schizophrenia, and is not associated with genital ambiguity or genetic abnormality ... Since some follow-up studies have provided evidence that some true transsexuals achieve more happy and productive lives with the aid of surgery, it is justified in carefully selected men.

The Court concludes, in agreement with the Sixth, Seventh, Eighth and Tenth Circuits, that transsexualism is a serious psychiatric disorder. Because transsexualism is a serious medical condition, the Supreme Court's decision in *Estelle* mandates that transsexuals have a right to receive treatment. 429 U.S. at 97.

**2. Whether transsexual prisoners' right to treatment was 'clearly established' in August 1992**

In order to succeed on a *Bivens* cause of action, a plaintiff must show that the defendant violated a constitutional or statutory right which was "clearly established" and "of which a reasonable person would have known" in order to defeat a claim of qualified immunity. *Crawford–El*, 93 F.3d at 816, quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The legal right allegedly violated by the defendant must have been "clearly established at the time of the challenged actions" or the law must have "clearly proscribed the actions the defendant claims he took." *Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

It is undisputed that Moritsugu was aware of the BOP's alleged failure to treat Farmer for her transsexualism by August 11, 1992 (at the very latest), when he responded by letter to her request for treatment.

By 1992, the Sixth, Seventh, Eighth, and Tenth Circuits had already determined that transsexualism was a serious medical condition. *See Phillips v. Michigan Dept. of Corrections*, 731 F.Supp. 792 (W.D.Mich.1990), *aff'd* 932 F.2d 969 (6th Cir.1991); *White v. Farrier*, 849 F.2d 322 (8th Cir.1988); *Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987), *cert denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *Supre v. Ricketts*, 792 F.2d 958 (10th Cir.1986). As of 1992, no Circuit had determined that transsexualism was not a serious medical condition.

It was thus clearly established by 1992 in four Circuits that deliberate indifference by prison officials to a prisoner's transsexualism would violate the Eighth Amendment, pursuant to *Estelle*, 429 U.S. at 97. In 1992, Farmer was incarcerated at MCFP–Springfield in Missouri. Moreover, the State of Missouri lies within the Eighth Circuit, where the determination that transsexualism is a "serious medical need" had been made as early as 1988, in the Circuit Court's decision in *White*, 849 F.2d at 325.

For these reasons, the Court concludes that any reasonably competent and professional Medical Director of BOP facilities nationwide "would have known" of the Circuit Court decisions. Any reasonable Medical Director should have accepted as 'clearly established' that transsexual prisoners had the right to receive treatment, given that four of the Circuits (including the Circuit in which the complaining prisoner was incarcerated) had considered the issue and had, without

exception, decided that transsexual prisoners suffered from a serious medical condition. *Crawford–El,* 93 F.3d at 816, (citing *Harlow,* 457 U.S. at 815).

### 3. Whether Moritsugu's conduct could possibly constitute a violation of Farmer's clearly established constitutional right to treatment

Having established that transsexual prisoners' right to treatment had been clearly established at the time of Moritsugu's conduct, the Court must now determine whether Farmer's factual allegations could possibly constitute a violation of that clearly established constitutional right. *Crawford–El,* 93 F.3d at 825.

### a. Moritsugu's failure to promulgate a new transsexual policy

■ Farmer claims that Moritsugu's failure to promulgate a new policy that would require the BOP medical staff to treat her gender dysphoria demonstrates deliberate indifference to her serious medical needs.

*Estelle* prohibits indifference to "serious medical conditions." 429 U.S. at 104. The BOP's policy is to provide care that is either "medically mandatory" or "presently medically necessary." Since the Court has followed the precedent set by four Circuits and determined that transsexualism is a serious medical condition, Farmer has a right, under both *Estelle* and the existing BOP general policy, to receive treatment.

The Defendants, including Dr. Moritsugu, have thus not failed to promulgate a policy which requires the BOP medical staff to provide Farmer with treatment, since the BOP's *current* policy requires that she receive treatment and, on its face, does not violate the Eighth Amendment to the U.S. Constitution. Farmer presently has the relief she seeks in this claim under the existing policy.

Moritsugu's failure to promulgate a new policy thus cannot possibly constitute a violation of Farmer's constitutional rights. Since a defendant's alleged conduct must violate clearly established law in order for the plaintiff to withstand the defendant's motion for summary judgment, *Crawford–El,* 93 F.3d at 825, and since Moritsugu's alleged conduct (his failure to promulgate a new policy) does not violate Farmer's constitutional rights, summary judgment must be entered in his favor.

### b. Moritsugu's failure to direct the medical staff to provide Farmer with treatment

■ Farmer also alleges that Moritsugu's failure to order the medical staff to provide her with treatment constitutes deliberate indifference to her serious medical needs in violation of the Eighth Amendment. Although resolution of this claim depends in part upon whether or not Farmer received treatment (which is a material fact very much in dispute), the Court must determine whether Farmer's allegations could "possibly" constitute a constitutional violation in order to determine whether Moritsugu is entitled to qualified immunity.

The Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 839–40, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), adopted a "subjective recklessness" test for "deliberate indifference" under the Eighth Amendment. The Court stated that "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

In this case, Dr. Moritsugu responded to Farmer's requests for treatment in his August 11, 1992 letter to her in which he explained the BOP's policy regarding the treatment of transsexuals. He stated that, while the BOP policy provides that "the use of hormones for transsexualism may be continued at the same level as prior to incarceration with [his] approval" ... [Farmer was] not on hormone therapy upon [her] arrival in the Federal Bureau of Prisons. (Defs.' Ex. 1, Letter from Moritsugu to Farmer of 8/11/92, 1.) Dr. Moritsugu stated that Farmer had received counseling by mental health personnel and that those personnel remained available to assist her. (*Id.*) He stated, however, that Farmer did "not present a specific mental health problem that mental health

personnel can isolate for treatment." (*Id.* at 2.)

It is clear from his letter that Moritsugu believed that Farmer was receiving no treatment at all for her transsexualism. He stated that, under the BOP transsexual policy, she was not eligible for hormone therapy. He also claimed that Farmer presented "no specific mental health problem that mental health personnel can isolate for treatment." (*Id.* at 1–2.)

Moritsugu's response to Farmer's request for treatment acknowledges and sanctions the withholding of any treatment from Farmer. Assuming Moritsugu's knowledge that transsexualism was a serious medical condition that required treatment (both under the Constitution and BOP policy), the Court concludes that Moritsugu's response could very possibly have constituted deliberate indifference to Farmer's serious medical needs.

In response, Defendants claim that while Dr. Moritsugu is responsible for overseeing the health care provided at BOP institutions, he is not responsible for the day-to-day medical care of inmates. They argue that the imposition of liability on this basis rests on the doctrine of respondeat superior, which cannot be the basis for individual liability. *Boykin v. District of Columbia*, 689 F.2d 1092, 1097–99 (D.C.Cir.1982).

· The Court rejects the government's arguments. First, under the BOP Program Statement, it is the Medical Director himself who must personally authorize hormone therapy for transsexual prisoners. The BOP policy itself thus requires of the Medical Director a heightened level of knowledge of, and responsibility for the medical health of transsexual prisoners. Second, in his letter, Moritsugu himself confirmed findings that Farmer did not require treatment, thus ensuring that none would be required. Finally, a supervisor can be held liable if he fails to train or control the subordinates who cause the plaintiff's injury. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The Court thus rejects Dr. Moritsugu's claim of qualified immunity and determines that he is not immune from suit in this action on the claim that he failed to direct the medical staff to provide Farmer with appropriate treatment.

## D. Eighth Amendment Claims

Deliberate indifference to a serious medical condition constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. at 97. Farmer claims that Defendants Moritsugu and Hawk (Director of the BOP), by failing to promulgate a new policy which would have required the BOP medical staff to provide her with treatment, have violated her Eighth Amendment rights. She also claims that Hawk has failed to enforce the existing BOP policy, in violation of her Eighth Amendment rights. Finally, Farmer claims that Moritsugu has failed to direct the BOP medical staff to provide her with treatment for transsexualism, also in violation of her Eighth Amendment rights. The Court will consider these arguments *seriatim.*

### 1. Defendants' failure to promulgate a new transsexual policy

Farmer claims that Defendants' failure to promulgate a new policy that would require the BOP medical staff to treat her gender dysphoria demonstrates deliberate indifference to her serious medical needs. The Court has determined above (Part II(C)(3)(a)) that the existing BOP policy and *Estelle* both guarantee transsexuals the right to receive treatment for their transsexualism. Defendants have thus not failed to promulgate a policy which requires the BOP medical staff to provide Farmer with treatment, since the BOP's current policy does require that she receive treatment and, on its face, does not violate the Eighth Amendment to the U.S. Constitution. The Court thus enters judgment in favor of all the Defendants on this claim.

### 2. Enforcement of existing BOP policy

Farmer also alleges that Defendant Moritsugu has failed to direct the BOP medical staff to provide her with treatment, and similarly, that Defendant Hawk has failed to enforce the existing BOP policy. The resolution of both allegations turns on whether

Farmer has or has not received treatment for her transsexualism.

■ The right to treatment does not include the right to a specific mode of treatment. *See Brown*, 63 F.3d at 970; *White*, 849 F.2d at 327–28; *Meriwether*, 821 F.2d at 414. Rather, it is the right to treatment of some kind. "[G]iven the wide variety of options available for the treatment of gender dysphoria and the highly controversial nature of some of those options, a federal court should defer to the informed judgment of prison officials as to the appropriate form of medical treatment." *Meriwether*, 821 F.2d at 414.

■ The BOP's transsexual policy does discuss the provision of hormone therapy for transsexual inmates. The BOP has decided not to provide Farmer with hormone therapy under the provisions of this policy, however, reasoning that Farmer had not been receiving hormone therapy prior to her incarceration.

In *Supre*, a transsexual inmate challenged the refusal of the State's Department of Corrections to provide her with female hormone therapy. The Court found that "the Department of Corrections made an informed judgment as to the appropriate form of treatment and did not deliberately ignore plaintiff's medical needs. The medical decision not to give plaintiff estrogen until further study does not represent cruel and unusual punishment." *Supre*, 792 F.2d at 963. Similarly, in this case, the BOP's refusal to provide Farmer with female hormone therapy does not, in and of itself, constitute cruel and unusual punishment. Again, Farmer has a right to receive treatment for her transsexualism, but not a right to receive a specific treatment. *See Meriwether*, 821 F.2d at 414.

■ Defendants assert that "[t]he BOP provides psychological counseling to the plaintiff on a regular basis." (Defs.' Reply 16.) They claim that Dr. Michael Schaefer, a BOP psychologist, has bi-weekly sessions with Farmer and that "other staff psychologists meet with the plaintiff on an almost daily basis." (*Id.* 17. *See also* Schaefer Decl. 1–3.) Schaefer attaches to his Declaration the Staff Visitors Log from May 29, 1996 through December 13, 1996, which documents psychologists' and other doctors' visits to Farmer. The Log indicates that, beginning in August 1996, various staff members (including Schaefer) visited Farmer on several occasions. The information contained in the Log however, is inconclusive at best—staff do not always indicate which prisoner or prisoners they plan to visit or for what purpose. It is by no means clear that anyone visits Farmer on a biweekly, much less daily, basis. The duration of Farmer's "therapy" sessions with Schaefer or with others is also unclear.

Farmer contends that she is currently receiving no form of treatment all for her transsexualism, and that no treatment was ever provided or offered following the retirement of Dr. Hilkey in 1996. (Farmer Decl. at 4–5.)

A Court may not enter summary judgment if there exists a genuine dispute about a material fact; a "genuine" dispute requires "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also Hunter–Boykin v. George Washington University*, 132 F.3d 77 (D.C.Cir.1998). The standard here is whether Farmer has alleged acts or omissions sufficiently harmful to demonstrate deliberate indifference to her serious medical needs. *Estelle*, 429 U.S. at 106.

Once the party moving for summary judgment has satisfied its initial burden, our Circuit requires that rebuttal testimony must either "come from persons familiar with the particular events to which the defendants' witnesses testified", or that it must "cast more than metaphysical doubt on the credibility of that testimony." *Bias v. Advantage Int'l, et al.*, 905 F.2d 1558, 1561 (D.C.Cir. 1990), *cert. denied*, 498 U.S. 958, 111 S.Ct. 387, 112 L.Ed.2d 397 (1990).

Schaefer has declared that he provides treatment to Farmer on a regular basis. Farmer has submitted her own Declaration in which she directly contradicts Schaefer's statements regarding her treatment.

At the summary judgment stage, it is not the Court's function to weigh the evidence and determine the truth. Instead, the Court may only determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Here, Farmer has demonstrated a "specific fact showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324, namely, whether the BOP has provided her with treatment for her transsexualism. Because material facts are in dispute, Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claims of failure to provide Farmer with treatment in accordance with existing SOP policy must be denied.

### E. Equal Protection Claim

 Farmer claims that the SOP's policy regarding the medical treatment of transsexuals violates the Equal Protection Clause of the Fifth Amendment.[3] She specifically challenges the provision of the BOP policy that requires transsexuals to provide "appropriate documentation" of prior treatment before receiving hormone treatment from the BOP ("documentation provision"). (Defs.' Ex. 2, Bureau of Prisons Program Statement 6000.4, Ch. 5, Section 14, Transsexuals.)

Inmates who suffer from mental illnesses other than transsexualism are not required to show proof that they received a particular form of treatment before their incarceration in order to continue that treatment during their incarceration. Farmer argues that inmates who suffer from gender dysphoria, or transsexualism, are similarly situated to those who suffer from other mental illnesses.

Farmer argues that the BOP discriminates between transsexual inmates and inmates with mental disorders other than transsexualism by requiring a transsexual inmate to prove that she had received a specific form of treatment for transsexualism prior to her incarceration as a prerequisite to receiving such treatment from the BOP. She argues that such discrimination has violated her right to equal protection of the laws. (Compl. at 11–12.)

Defendants counter that Farmer has fundamentally misunderstood the policy, which does not require that all transsexuals provide evidence of prior hormone therapy in order to obtain treatment. Defendants state that, while the BOP "prefers" to have prior documentation of pre-incarceration hormone therapy, such documentation is not always required. (Defs.' Mem. Summ. J. at 23).

The government's interpretation of the BOP policy is plainly inconsistent with the policy's language. The documentation provision states simply that "[t]he use of hormones . . . may be continued at approximately the same levels as prior to incarceration [ ]with appropriate documentation . . ." (Defs.' Ex. 2, Bureau of Prisons Program Statement 6000.4, Ch. 5, Section 14, Transsexuals (emphasis added).) Nothing in the provision intimates that documentation is only a BOP "preference" rather than a requirement; if the documentation provision is in fact nothing more than a preference, then such preference constitutes a departure from BOP's existing written policy.

The Court will not base its decision on government counsel's interpretation of the policy for several reasons. First, the government's interpretation is inconsistent with the written language of the BOP policy. Second, counsel's interpretation is advanced for the first time before this Court. *See generally, Nat'l Wildlife Federation, et al. v. Browner*, 127 F.3d 1126, 1129 (D.C.Cir.1997) (noting that, while "deference to an interpretation offered in the course of litigation is still proper as long as it reflects the 'agency's fair and considered judgment on the matter'," an agency's " 'litigating positions' are not entitled to deference when they are merely appellate counsel's 'post hoc rationalizations' . . . advanced for the first time in the reviewing court." (citations omitted)) Finally, neither prisoners in general nor Farmer in particular were given notice of the alleged policy, which differs markedly from the written public policy contained in the *Policy Statement*. The Court will thus base its

---

**3.** That Clause imposes on the Federal government the same standards required of the states by the Equal Protection Clause of the Fourteenth Amendment. *Schweiker v. Wilson*, 450 U.S. 221, 226, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).

analysis only on the language actually contained in the official, written, and public *Program Statement.*

Farmer states that, for "several years prior to her incarceration," she had been prescribed female hormones as treatment for her transsexualism. (Compl. at 4, ¶ 11.) Under the existing transsexual policy, she should qualify to receive hormone therapy once she provides documentation and obtains approval from the Medical Director.

In his August 11, 1992 letter to her, Dr. Moritsugu states that Farmer had not been receiving hormone therapy prior to her arrival in the Federal Bureau of Prisons. The parties do not dispute that Farmer has not received hormone therapy since being incarcerated.

The Equal Protection Clause requires that all persons who are similarly situated be treated alike. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The Equal Protection Clause is inapplicable, however, to groups of persons who are not similarly situated. *See United States v. Woods*, 888 F.2d 653, 656 (10th Cir.1989), *cert. denied*, 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990).

Farmer argues that inmates who suffer from transsexualism are similarly situated to those who suffer from other mental illnesses, and that the BOP can show no rational basis for drawing a distinction between transsexualism and other mental illnesses.

Defendants vigorously deny that transsexual inmates are similarly situated to inmates with other mental illnesses. They also deny that Farmer is similarly situated to inmates who suffer from other mental illnesses, because she has AIDS. They argue that, unlike other mental illnesses, transsexualism has both a mental and a physical component. Additionally, providing hormone therapy or surgery to an inmate with AIDS may compromise that inmate's immunological system and hinder the treatment of AIDS. (Defs.' Mem. Summ. J. at 21–22).

Whether transsexual inmates are similarly situated to inmates with other illnesses, and whether transsexual inmates infected with AIDS are similarly situated to transsexual inmates not infected with AIDS are factual determinations that the Court is not prepared to make on the basis of this virtually non-existent record.

Defendants rely on only the Declaration of Dr. Subash Duggirala, Chief of the Office of Quality Management in the Health Services Division of the BOP, to support their arguments. The Court notes that Dr. Duggirala is a Medical Doctor who has a Masters in Public Health but makes no claim to be an expert on transsexualism, psychiatry, or AIDS. This is an area where expertise is required, and the Court will not proceed until the record is fleshed out with further evidence on the subject from appropriate experts.

Defendants' Motion for Summary Judgment is thus denied as to Plaintiff's Equal Protection Claims.

### III. Conclusion

For the foregoing reasons, Defendants' Motion [# 78] is hereby **granted** with respect to Plaintiff's claim that the BOP and Dr. Moritsugu, by failing to promulgate a new policy for the treatment of transsexuals, violated the Eighth Amendment (Count I, ¶ 54; Count II ¶ 56, implementation clause). Judgment will thus be entered for Defendants on that issue. Defendants' Motion is hereby **denied** with respect to all other claims. The claims made by Plaintiff in the remaining Counts of her Complaint will thus go forward.