Selena D. JOHNSON Plaintiff

v.

**FRESH MARK, INC.,**
**et al., Defendants**

No. 4:02CV1576.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 30, 2003.

Randi Allison Barnabee, SmithBarnabee & Co., L.P.A., Twinsburg, OH, for Selena D. Johnson, Plaintiff.

Kenneth B Stark, Duvin, Cahn & Hutton, Cleveland, OH, for Fresh Mark, Inc., Brian Wess, Defendants.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the Motion to Dismiss filed on behalf of the Defendants on November 22, 2002 (Dkt.# 8). Following a motion for extension of time, Plaintiff filed her Opposition Brief on January 13, 2003 (Dkt.# 12). No reply brief was filed. Plaintiff, a transsexual[1], contends that her[2] employer and its Director of Human Resources discriminated against her in violation of Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*, as well as the public policy exception to the "employment at will" doctrine under Ohio law. For the reasons stated below, the Defendants' motion is **GRANTED**.

1. The Complaint states, "[Plaintiff] is a preoperative transsexual woman who suffers from Gender Identity Disorder ... a psychological condition classified under the Diagnostic and Statistical Manual of Medical Disorders–Fourth Edition." Complaint at ¶ 1.

The D.C. Circuit has described transsexualism as a gender identity disorder, the sufferers of which believe that they are "cruelly imprisoned within a body incompatible with their real gender identity." The disorder is commonly accompanied by a desire to change one's anatomic sexual features to conform physically with one's perception of self. To relieve this gender discomfort, transsexuals may pursue some combination of hormone therapy, surgery, and psychological counseling. They may also choose to live in their preferred gender role by dressing, naming, and conducting themselves in conformity with that gender. *Farmer v. Moritsugu,* 163 F.3d 610, 611 (D.C.Cir.1998)(*per curiam* ) (*Quoting* The Merck Manual of Medical Information, 418–419 (1997)).

2. As Plaintiff refers to herself as a female, the Court will do the same. See, e.g., *Sommers v. Budget Mktg., Inc.,* 667 F.2d 748, 748 (8th Cir.1982).

The following factual allegations are taken from the Plaintiff's Complaint and will be accepted as true for the purpose of resolving this motion. Plaintiff was born on January 26, 1976, and was designated as male solely based upon a cursory genital examination. Since 1993, Plaintiff has lived continuously and without interruption as a person of the female gender.

Plaintiff began her employment at Fresh Mark, a meat packing plant, in March, 2001. As a part of the hiring process, Fresh Mark retained a copy of Plaintiff's driver's license which identified her gender as "male". Plaintiff admits in her Complaint that the Ohio Bureau of Motor Vehicles policy with respect to individual's drivers' licenses was, at all time material to this case, to approve assignment of a gender indicator incongruent with an individual's birth-designated sex only upon proof that such individual had undergone complete sex-reassignment surgery.

After allegations surfaced that Plaintiff had been using both the men's and women's restrooms at the meat-packing plant, the Director of Personnel reviewed Plaintiff's personnel file and discovered that her drivers' license indicated that her gender was "male". On March 29, 2001, Plaintiff received a memo which informed her that she was being sent home, and that she could only return to work after providing a statement from her physician indicating her gender, and an explanation for why she was using both restrooms.

As a result, Fresh Mark was contacted by Plaintiff's *counsel*, rather than her physician, who informed the company that Plaintiff was "neither entirely male not entirely female, and it was most appropriate for her to use a women's restroom or, alternatively, a unisex restroom."

In a letter dated April 24, 2001, Fresh Mark informed Plaintiff that, based upon the information on her drivers' license, she would be required to use the mens' facilities at the plant. Plaintiff contends that "fearing for her own safety and well-being", she refused to return to work under the condition that she use the men's restroom. She was ultimately terminated for being absent from work on three consecutive days without reporting.

### Standard of Review

"A Motion to Dismiss may only be granted if it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 544 (6th Cir.1991) *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). For the purposes of a motion to dismiss, "all allegations in the complaint must be taken as true and construed in a light most favorable to the nonmovant." *Ang*, 932 F.2d at 544. While the court must accept the plaintiff's *factual* allegations as true, "[t]he trial court need not accept as true [a plaintiff's] legal conclusions." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 405 (6th Cir. 1998).

"As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.R.Civ.P. 56." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (*Quoting Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir.1997)). There are, however, exceptions to this general rule. Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.* Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies. *Id. See also Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th

Cir.1997)(public records); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir.1996)(judicial notice); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir.1993)(letter decisions of governmental agencies).

### *Title VII*

Title VII of the Civil Rights Act of 1964 provides that "it shall be an unlawful employment practice for an employer ... to discriminate ... because of [an] individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The question here is whether United Consumer discriminated against Plaintiff "because of ... sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

As noted by the Honorable Kathleen M. O'Malley in *Doe v. United Consumer Financial Services,* 1:01CV1112, the question of how Title VII's seemingly straightforward prohibition applies to transsexuals is a complex one.

The Defendants point out that all federal courts that have squarely addressed this issue have held that Title VII does not prohibit discrimination based on an individual's transsexualism. *See, e.g., Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081 (7th Cir.1984); *Sommers v. Budget Mktg., Inc.,* 667 F.2d 748 (8th Cir.1982); *Holloway v. Arthur Andersen,* 566 F.2d 659 (9th Cir. 1977). Basing their analysis on plain language and Congressional intent, these courts (hereinafter collectively referred to as *"Ulane"*) found that Congress "had a narrow view of sex in mind" and "never considered nor intended that this 1964 legislation apply to anything other than the traditional concept of sex." *Ulane,* 742 F.2d at 1085–86.

Plaintiff argues, however, that *Ulane* not apply here, because Plaintiff is not alleging discrimination based on transsexu-

ality *per se;* rather, she asserts that Fresh Mark engaged in "sexual stereotyping", which is prohibited by *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In *Price Waterhouse,* a female senior manager was being considered for partner in a nationwide professional accounting partnership. *Id.* at 232, 109 S.Ct. 1775. The Supreme Court found that, in part, she was denied partnership because she was considered not "feminine enough" in dress and behavior. *Id.* at 235, 109 S.Ct. 1775. Finding that such conduct amounted to prohibited "sex stereotyping," the Court noted, "[W]e are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group.'" *Id.* at 251, 109 S.Ct. 1775 (citation omitted).

In the case *sub judice,* Plaintiff alleges that Fresh Mark fired her because her appearance and behavior did not meet the company's sex stereotypes of a woman. The Defendants, on the other hand, argue that Plaintiff's *Price Waterhouse* claim is a disingenuous recharacterization of a transsexuality discrimination claim and is thus foreclosed by *Ulane.* The Defendants' position, as also noted by Judge O'Malley in *Doe,* highlights the tension between *Ulane* and *Price Waterhouse.* Plaintiff claims that *Price Waterhouse* undercuts *Ulane's* continuing viability, while Defendants argue that *Ulane* survives *Price Waterhouse* unscathed.

The district court in *Doe* concluded that Doe's androgynous appearance clearly prompted her employer's inquiries about her gender, and, therefore, may have also prompted her dismissal. Insofar as the employer may have relied on Doe's outward appearance, which apparently was not clearly male or female, Judge O'Malley refused to dismiss Doe's Title VII claim

against her employer under the *Price Waterhouse* theory of sex-stereotyping.

However, the same is not true in the case *sub judice*. Fresh Mark did not require Plaintiff to conform her *appearance* to a particular gender stereotype, instead, the company only required Plaintiff to conform to the accepted principles established for gender-distinct public restrooms.

Plaintiff's admits that her drivers' license indicates that her gender is male, and she also admits that the Bureau of Motor Vehicles refuses to approve assignment of a gender indicator incongruent with an individual's birth-designated sex only upon proof that such individual had undergone complete sex-reassignment surgery. Consequently, it was not unreasonable for the company to presume from the foregoing facts that Plaintiff had not undergone "complete sex-reassignment surgery."

Moreover, when the company sought the advice of her *physician* to determine the appropriate facilities for Plaintiff, she instead chose to provide only her counsel's decidedly non-clinical explanation that she was "neither entirely male or entirely female". Therefore, it is the opinion of this Court that the company made a good faith effort to determine which facilities were appropriate for Plaintiff, but left with her counsel's ambiguous response, was forced to rely on the unequivocal information provided on her drivers' license.

■ In her Memorandum in Opposition to the Motion to Dismiss, Plaintiff now states that "Defendants fail to allow for the *possibility* that Plaintiff *might be* intersexed[3] ..." Pl. Opp. Br. at p. 3. (Emphasis added). As Plaintiff merely hypothesizes about her possible intersexuality, rather than stating it as a fact for this Court's consideration, the Court will not rely on the distinction between transsexualism and intersexuality as the basis for thus opinion.

*Assuming arguendo* that intersexuality, as opposed to transsexualism, is protected by Title VII[4], the fact that the Plaintiff *might* be intersexed begs the question of why she did not divulge this fact to the company as a congenital abnormality. The inexact explanation of Plaintiff's gender provided to the employer by Plaintiff's counsel made it appear that Plaintiff's physical anomalies are the product of efforts to medically transform herself into a woman, rather than the results of congenital intersexuality.[5]

Therefore, insofar as Plaintiff's appearance was not challenged by her employer, the Court finds that Plaintiff does not state a valid claim for sex-stereotyping as that practice has been interpreted by *Price Waterhouse* and its progeny. Moreover, even *assuming arguendo* that Title VII protects intersexed persons, it is clear in the case *sub judice* that Plaintiff did not inform her employer that she was intersexed. Consequently, the employer would

3. According to the Intersex Society of North America is that intersexuality is a set of medical conditions that feature congenital anomaly of the reproductive and sexual system. That is, a person with an intersex condition is born with sex chromosomes, external genitalia, or an internal reproductive system that is not considered for either male or female.

4. In a footnote, the *Ulane* Court distinguishes transsexualism, wherein the individual is a physiologically normal person, from a situa-

tion where the individual's "discomfort or discontent" about nature's choice of his or her particular sex" is the result of a congenital condition, *i.e.* a hermaphrodite. *Ulane*, 742 F.2d at 1083 fn. 3.

5. In a footnote, Plaintiff acknowledged that "International experts on transsexualism and intersexuality describe and argue that the two phenomena are so closely linked as to be the same".

not know that she was protected by Title VII. Accordingly, Plaintiff's Title VII claim must be dismissed as a matter of law for failure to state a claim upon which relief can be granted.

### The Americans With Disabilities Act

■ Plaintiff asserts a claim of discrimination under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* She claims that her Gender Identity Disorder results from a physical impairment which substantially limits her major life activities, and that Fresh Mark, after being notified of her transgendered status, refused to make reasonable accommodations for her, that is, to "provide [Plaintiff] with alternative restroom facilities."

Title I of the ADA states that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a disability to include "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Id. § 12102(2)(A).

But certain conditions are explicitly excluded from that broad definition. "Transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, [and] other sexual behavior disorders" are not disabilities under the statute. Id. § 12211(b)(1).

Plaintiff argues that, because her Gender Identity Disorder results from a physical impairment, it should not be excluded. This argument is not persuasive. As Judge O'Malley held in *Doe,* the plain language of the statute indicates that transsexualism is excluded from the definition of disability no matter how it is characterized, whether as a physical impairment, a mental disorder, or some combination thereof. Plaintiff does not have a disability as defined in the statute. Thus, she fails to state a claim under the ADA.

Even if transsexualism was not explicitly excluded, Plaintiff would fail to state an ADA claim because she has failed to specify what major life activities have been affected by her condition.[6] "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). Her conclusory statement that she might describe these in the future is not sufficient to defeat a 12(b)(6) motion. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

■ Finally, to establish a *prima facie* case of employment discrimination under the ADA, Plaintiff must show that: (1) she is disabled; (2) she is otherwise qualified for the position with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) her employer knew or had reason to know of her disability; and (5) her position remained open. *Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 449 (6th Cir.1999).

As the Court has stated in its Title VII analysis, Plaintiff failed to inform the Defendants of her intersexuality. Insofar as the employer in this case was not aware of Plaintiff's "disability", it is clear that Plaintiff has cannot state the fourth essential

---

6. Ironically, in her Opposition Brief, Plaintiff states that she does not make the mistake made in *Doe,* that is, failing to identify the specific major life activities which have been affected by her condition. She then states that medical and scientific research in the thirteen years following the enactment of the ADA require a finding that transsexualism is a physically based gender disorder. Ultimately, however, she never identifies a major life activity as required by the Act.

element of her *prima facie* case under the ADA.

Therefore, based upon the explicit exclusion of transsexualism from the ADA, Plaintiff's failure to identify a "major life activity", and the fact that she admits that her employer was not aware of her intersexuality, Plaintiff's ADA must be dismissed as a matter of law for failure to state a claim upon which relief may be granted.

### Public Policy Claim

Finally, as the federal claims in this case have been resolved before trial, this Court declines to exercise supplemental jurisdiction over the remaining state claim. 28 U.S.C. § 1367(c)(3); *See also Taylor v. First of America Bank–Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992).

**IT IS SO ORDERED.**

### JUDGMENT

This matter is before the Court upon the Motion to Dismiss filed on behalf of the Defendants on November 22, 2002 (Dkt.# 8). For the reasons set forth in the attached Memorandum Opinion and Order which is incorporated herein by reference, the Defendants' Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**